BIVINS v BIVINS

Docket No. 82681. Submitted June 19, 1985, at Lansing.—Decided
    August 22, 1985.
        Plaintiff, Lenwell J. Bivins, and defendant, Teri S. Bivins, were
        divorced by order of the Broward Circuit Court in Broward
        County, Florida. The parties were to share custody of their
        minor daughter and plaintiff was to pay child support to
        defendant. Defendant moved to Michigan, bringing the child
        with her. A dispute over plaintiff's visitation rights arose,
        resulting in plaintiff's filing of a motion of suggestion of con-
        tempt in the Florida court. The court granted plaintiff visita-
        tion from December 16, 1984, to January 5, 1985, to take place
        in Florida. Plaintiff traveled to defendant's Michigan residence
        to pick up the child but defendant refused to deliver the child
        because the Florida visitation order was not signed by a Michi-
        gan judge. Plaintiff then filed a complaint against defendant in
        Jackson Circuit Court invoking the Uniform Child Custody
        Jurisdiction Act and asking the court to enter an order order-
        ing defendant to deliver the child to plaintiff in accordance
        with the Florida court's order. The court, Russell E. Noble, J.,
        entered an order giving full effect to the Florida visitation
        order but modifying that order to limit the visitation to defen-
        dant's home. Plaintiff appealed. *Held:*
            The Jackson Circuit Court was obligated under the Uniform
        Child Custody Jurisdiction Act to enforce the Florida court's
        order without modification because the Florida court had pre-

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] Am Jur 2d, Divorce and Separation § 1145.
    Validity, construction, and application of Uniform Child Custody
    Jurisdiction Act. 96 ALR3d 968.
[2] Am Jur 2d, Divorce and Separation § 1147.
    Validity, construction and application of Uniform Child Custody
    Jurisdiction Act. 96 ALR3d 968.
[3] Am Jur 2d, Divorce and Separation, §§ 963 *et seq.*
    Validity, construction and application of Uniform Child Custody
    Jurisdiction Act. 96 ALR3d 968.
[5, 6] Am Jur 2d, Parent and Child §§ 25-45.
    Necessity of requiring presence in court of both parties in proceed-
    ings relating to custody or visitation of children. 15 ALR4th 864.

ferred jurisdiction over the matter. The Michigan court also committed clear legal error in modifying the visitation order without holding an evidentiary hearing to determine the necessity of such modification.

Reversed and remanded for dismissal.

1. PARENT AND CHILD — CHILD CUSTODY — UNIFORM CHILD CUSTODY JURISDICTION ACT.

Enforcement by the courts of Michigan of a child custody decree or visitation order from another state is mandatory in a child custody or visitation dispute where the state in which the decree was rendered has adopted the Uniform Child Custody Jurisdiction Act (MCL 600.663; MSA 27A.663).

2. PARENT AND CHILD — CHILD CUSTODY — VISITATION — CHANGE OF CUSTODY OR VISITATION — UNIFORM CHILD CUSTODY JURISDICTION ACT.

Two preliminary requirements must be met before a Michigan court can modify a child custody decree or visitation order of a court of another state: (1) the court which rendered the decree or order either presently does not have jurisdiction or that court declines to exercise jurisdiction, and (2) the Michigan court has jurisdiction; once these two requirements are met, a third requirement arises: the modification can be ordered only after a full hearing on the merits which results in a determination that it is in the best interest of the child to do so (MCL 600.664[1]; MSA 27A.664[1]).

3. PARENT AND CHILD — CHILD CUSTODY — UNIFORM CHILD CUSTODY JURISDICTION ACT — JURISDICTION.

The Uniform Child Custody Jurisdiction Act provides that a state's courts may base jurisdiction to make a child custody determination (1) on the fact that the state is the home state of the child at the time of commencement of the custody proceeding or had been the child's home state within 6 months before commencement of the proceeding or (2) on a finding that it is in the best interest of the child that the state assume jurisdiction because there are significant connections between the child and at least one of the parents and the state and there is substantial evidence available in the state concerning the child's care, protection, training, and personal relationships; where the courts of two or more states may assert jurisdiction under these criteria, it must be determined which state has preferred jurisdiction (MCL 600.653[1]; MSA 27A.653[1]).

4. PARENT AND CHILD — CHILD CUSTODY — UNIFORM CHILD CUSTODY JURISDICTION ACT — SIGNIFICANT INTEREST TEST.

The significant interest test for jurisdiction over child custody

matters set forth in the Uniform Child Custody Jurisdiction Act provides that the courts of one state which may assert jurisdiction over the matter should relinquish jurisdiction to the courts of another state if the child and its family have equal or stronger ties with the other state; jurisdiction exists only if it is in the best interests of the child, and those interests are served best in the forum which has optimum access to relevant information about the child and family (MCL 600.653[1][b]; MSA 27A.653[1][b]).

5. PARENT AND CHILD — CHILD CUSTODY — VISITATION — CHILD CUSTODY ACT.

Michigan's Child Custody act governs the making of determinations regarding visitation disputes in Michigan and provides that the controlling consideration in determining visitation rights is the best interests of the child; before deciding a visitation rights dispute, a court must, at a minimum, evaluate the best-interests-of-the-child factors set forth in the act (MCL 722.21 *et seq.;* MSA 25.312[1] *et seq.).*

6. PARENT AND CHILD — CHILD CUSTODY — VISITATION — APPEAL.

The Court of Appeals reviews visitation orders, as an aspect of child custody cases, *de novo;* however, since the trial court is granted extremely broad powers in custody cases, the trial court's determination should be affirmed unless the court made findings of fact against the great weight of the evidence or committed a palpable abuse of discretion or a clear legal error on a major issue (MCL 722.28; MSA 25.312[8]).

*Blaine B. Johnson, Jr., P.C.* (by *Michael F. Skinner),* for plaintiff.

*George J. Brannick,* for defendant.

Before: ALLEN, P.J., and WAHLS and J. P. O'BRIEN,* JJ.

PER CURIAM. This case involves the Uniform Child Custody Jurisdiction Act, MCL 600.651 *et seq.;* MSA 27A.651 *et seq.* On December 7, 1984, plaintiff husband obtained a Florida court order granting him visitation of the parties' minor child,

* Recorder's court judge, sitting on the Court of Appeals by assignment.

who resides in Michigan with defendant wife. Visitation was refused. After a hearing on plaintiff's motion for enforcement of the Florida order in the Jackson County Circuit Court, the trial judge ordered the scheduled visitation as modified by the Michigan court. Plaintiff appeals as of right, contending that the Jackson County Circuit Court was without power to modify the terms of the Florida visitation order. We agree.

Plaintiff husband and defendant wife were divorced on June 22, 1984, pursuant to a final judgment of dissolution of marriage entered in the Circuit Court in Broward County, Florida. Although both parties were Florida residents when the divorce proceedings were instituted, defendant and the parties' minor child, Andrea, moved to Spring Arbor, Michigan, in November, 1983. Plaintiff remained a Florida resident. The judgment of dissolution provided that plaintiff and defendant would share custody of Andrea and that plaintiff was to pay child support of $125 per week. His appeal of the child support order is apparently pending before a Florida appellate court at this time.

A dispute over plaintiff's visitation rights arose almost immediately, and as a result plaintiff filed a motion of suggestion of contempt in the Florida court and was granted visitation from December 16, 1984, to January 6, 1985, to take place in Florida.

Plaintiff traveled to defendant's Spring Arbor residence to pick up Andrea. When he arrived on December 19, 1984, defendant refused to deliver Andrea to plaintiff, because the Florida visitation order was not signed by a Michigan judge. Accordingly, on December 21, 1984, plaintiff filed in Jackson County Circuit Court a complaint under the Uniform Child Custody Jurisdiction Act, peti-

tioning the court to "enter an order ordering defendant to deliver said minor child to plaintiff in accordance with the [Florida] order of clarification". Defendant filed a countercomplaint, requesting that plaintiff's petition be denied or, if granted, that plaintiff be required "to show good faith by making the support payments whole and current in accordance with the order and judgment of the [Florida] court".

Plaintiff's motion to enforce the Florida visitation order was heard on December 28, 1984. An order was entered on January 2, 1985, which provided that the Florida visitation order be given full effect but modified the order to limit the visitation to Andrea's Jackson County home.

The Uniform Child Custody Jurisdiction Act, MCL 600.651 *et seq.;* MSA 27A.651 *et seq.,* governs both 1) the power of this state's courts to enforce custody orders of other states, and 2) the jurisdiction of this state's courts to make child custody determinations. For purposes of the act, "custody determinations" includes court orders providing for visitation rights. MCL 600.652(b); MSA 27A.652(b). The act governs jurisdiction to make both initial decrees and modification decrees. MCL 600.652(d); MSA 27A.652(d).

It is clear that under the act the Jackson County Circuit Court was required to enforce the Florida court's visitation order of December 7, 1984. Section 663 of the act provides:

"The courts of this state shall recognize and enforce an initial or modification decree or judgment of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with sections 651 to 673 or which was made under factual circumstances meeting the jurisdictional standards of sections 651 to 673 as long as this decree or judgment has not been modified in accordance with jurisdictional

standards substantially similar to those of sections 651 to 673."

The purpose of this section is to declare that, as a matter of state law, the custody decrees of sister states will be recognized and enforced. 9 Uniform Laws Annotated, UCCJA, § 13, Commissioner's Note, p 151. Under § 663, enforcement of a custody or visitation order from another state is mandatory if the state in which the order was entered has adopted the act. *Bull v Bull,* 109 Mich App 328; 311 NW2d 768 (1981). Florida adopted the UCCJA in 1977. Fla Stat §§ 61.1302-61.1348. There is nothing in the record to indicate that the December 7, 1984, visitation order had been modified by the Florida court. Thus, the Jackson County Circuit Court was obligated under the statute to enforce the Florida order.

The issue then is whether the Jackson County Circuit Court had the further authority to modify the Florida order by providing for visitation only within Jackson County. We find that it did not.

When dealing with the modification of a child custody or visitation order of another state, a court of this state must follow the provisions of MCL 600.664(1); MSA 27A.664(1). *Bull, supra.* That subsection provides:

"If a court of another state has made a custody decree or judgment, a court of this state shall not modify that decree or judgment unless it appears to the court of this state that the court which rendered the decree or judgment does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with sections 651 to 673 or has declined to assume jurisdiction to modify the decree or judgment and the court of this state has jurisdiction."

Section 664 imposed at least two requirements

which had to be met before the Jackson County
Circuit Court could modify the Florida visitation
order: 1) the Florida court either did not have
jurisdiction under the jurisdictional prerequisites
of MCL 600.653(1); MSA 27A.653(1), or had de-
clined to exercise such jurisdiction *and* 2) the
Jackson County Circuit Court had such jurisdic-
tion. See *Bull, supra; Brown v Brown,* 104 Mich
App 621; 305 NW2d 272 (1981). If these two re-
quirements were met, a third requirement also
arose: the modification could be ordered only after
a full hearing on the merits which resulted in a
determination that it was in the best interest of
the child to do so. See *Brown, supra,* p 626.

The prerequisites for jurisdiction to make a
visitation determination by modification order are
enumerated in § 653(1) of the act. In pertinent
part, they are as follows:

"(1) A court of this state which is competent to decide
child custody matters has jurisdiction to make a child
custody determination by initial or modification decree
or judgment if any of the following exist:

"(a) This state is the home state of the child at the
time of commencement of the proceeding or had been
the child's home state within 6 months before com-
mencement of the proceeding and the child is absent
from this state because of his removal or retention by a
person claiming his custody or for other reasons, and a
parent or person acting as parent continues to live in
this state.

"(b) It is in the best interest of the child that a court
of this state assume jurisdiction because the child and
his parents, or the child and at least 1 contestant, have
a significant connection with this state and there is
available in this state substantial evidence concerning
the child's present or future care, protection, training,
and personal relationships."

Under subsection (1)(a), a court in the child's

home state has jurisdiction to make a child custody determination. Under subsection (1)(b), if the child and his family have equal or stronger ties with another state, a court in that state has jurisdiction. If this alternative test produces concurrent jurisdiction in more than one state, the question becomes which state has preferred jurisdiction. See 9 Uniform Laws Annotated, UCCJA, § 3, Commissioner's Note, p 123.

Here, the Jackson County Circuit Court apparently believed that it had jurisdiction to modify the visitation order pursuant to MCL 600.653(1)(b). The court seemed to think that it would be in the best interest of the child to assume jurisdiction because there was no evidence of fitness of plaintiff's Florida residence and because plaintiff admitted that he had not been supporting the child since the parties' divorce was entered. We find that the Jackson County Circuit Court erred in assuming jurisdiction under this subsection. Section 653(1)(b) does not authorize consideration of the relative fitness of the parents for the best interest of the child; that is a substantive matter to be determined *after* jurisdiction to hear the case is established. Instead, that subsection focuses on the party's ties to this state and whether evidence regarding a petitioner's claim is accessible here.

Although the Jackson County Circuit Court did not have jurisdiction to hear plaintiff's complaint under § 653(1)(b), it did have jurisdiction under subsection (1)(a). Under that subsection, the court had jurisdiction if Michigan was Andrea's "home state" at the time plaintiff filed his complaint. MCL 600.652(e); MSA 27A.652(e) defines "home state" as:

"[T]he state in which the child immediately preceding the time involved lived with his or her parents, a

parent, or a person acting as parent, for at least 6 consecutive months, and in the case of a child less than 6 months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of the named persons are counted as part of the 6-month or other period."

Plaintiff filed his complaint on December 21, 1984. Defendant contends, and plaintiff does not dispute, that she and Andrea moved to Michigan in November, 1983. Thus, Michigan was Andrea's "home state", and the Jackson County Circuit Court could properly assume at least concurrent jurisdiction over the visitation dispute pursuant to § 653(1)(a).

The clause "does not now have jurisdiction" used in § 664(1) refers to the time when the petition to modify the visitation order was filed in Michigan. *Bull, supra.* Accordingly, December 28, 1984, the date on which defendant filed her countercomplaint requesting the Michigan court to condition enforcement of plaintiff's visitation on his payment of child support, controls whether the Florida court had jurisdiction under the act.

Clearly, the Florida court would not have had jurisdiction on December 28, 1984, pursuant to § 653(1)(a), the "home-state" basis for jurisdiction. Andrea did not then live in Florida and had not lived there within the preceding six months. Thus, if the Florida court had jurisdiction, it must have been pursuant to § 653(1)(b). The trial court specifically stated that it could not find that the Florida court did not have jurisdiction, and we agree.

Section 653(1)(b), set forth above, provides a "significant interest" test for jurisdiction. Under that subsection, if the child and her family have equal or stronger ties with a state other than Michigan, the other court has jurisdiction. The

purpose of the subsection is to limit jurisdiction rather than to proliferate it. Jurisdiction exists under the subsection only if it is in the child's best interest. This interest is served when the forum has optimum access to relevant information about the child and the family. See *McDonald v McDonald,* 74 Mich App 119; 253 NW2d 678 (1977). The Commissioner's Note to § 14 of the Uniform Child Custody Jurisdiction Act (the equivalent of MCL 600.664; MSA 27A.664) explains how §§ 653(1)(b) and 664(1) work together:

"Courts which render a custody decree normally retain continuing jurisdiction to modify the decree under local law. Courts in other states have in the past often assumed jurisdiction to modify the out-of-state decree themselves without regard to the preexisting jurisdiction of the other state. * * * In order to achieve greater stability of custody arrangements and avoid forum shopping, subsection [664(1)] declares that other states will defer to the continuing jurisdiction of the court of another state as long as that state has jurisdiction under [subsection 653(1)] of this Act. In other words, all petitions for modification are to be addressed to the prior state if that state has sufficient contact with the case to satisfy section [653]. The fact that the court had previously considered the case may be one factor favoring its continued jurisdiction. If, however, all the persons involved have moved away or the contact with the state has otherwise become slight, modification jurisdiction would shift elsewhere." 9 Uniform Laws Annotated, UCCJA § 14, Commissioner's Note, p 154. (Citation omitted.)

Here, contact with the State of Florida had not become so "slight" as to make Florida ineligible to decide the visitation dispute pursuant to the jurisdictional prerequisites of § 653(1)(b). We find that the Florida court had optimum access to evidence concerning the fitness of plaintiff's home for visita-

tion purposes. The Florida court, having entered the judgment of dissolution less than a year before the visitation controversy arose, was familiar with the parties' relationship to each other and to the child. Having recently made a custody determination, it was presumably familiar as well with the relevant best-interests-of-the-child factors, and accordingly could more accurately assess whether there had been a change in circumstances warranting modification of plaintiff's visitation rights. More importantly, having fashioned the original visitation order, the Florida court was in an excellent position to clarify that order so that it best fitted the circumstances of the parties. Having concluded that the Florida court had preferred jurisdiction to modify its visitation order, we believe that § 664 of the act precluded the Jackson County Circuit Court from making such modification.

Even if § 664 did not prohibit the modification, we find that the lower court committed clear legal error in modifying plaintiff's visitation rights without holding an evidentiary hearing to determine the necessity of such modification. If it was proper for the Michigan court to make a determination regarding the visitation dispute, that determination (like any intrastate visitation dispute) would be governed by the Child Custody Act, MCL 722.21 *et seq.;* MSA 25.312(1) *et seq. Farrell v Farrell,* 133 Mich App 502; 351 NW2d 219 (1984). Section 7 of the Child Custody Act provides in pertinent part:

"If a child custody dispute has been submitted to a circuit court as an original action under this act or has arisen incidentally from another action in a circuit court or another or judgment of a circuit court, for the best interests of the child the court may:

\* \* \*

"(c) Modify or amend its previous judgments or orders for proper cause shown or because of change of circumstances until the child reaches 18 years of age. * * *"

The controlling consideration in determining visitation rights is the best interests of the child. *Farrell, supra.* Thus, before deciding the visitation rights dispute, the circuit court must, at a minimum, evaluate those best-interests-of-the-child factors enumerated at MCL 722.23; MSA 25.312(3) which focus on the contested issue. *Hoffman v Hoffman,* 119 Mich App 79; 326 NW2d 136 (1982). Here, the lower court heard no testimony regarding the best-interests-of-the-child factors and failed to make any findings of fact on the factors. Visitation orders, as an aspect of child custody cases, are reviewed *de novo* by this Court. *Longhi v Longhi,* 119 Mich App 41; 325 NW2d 617 (1982). The circuit court's determination will be affirmed unless the court made findings of fact against the great weight of the evidence or committed a palpable abuse of discretion or a clear legal error on a major issue. MCL 722.28; MSA 25.312(8). In light of the complete absence of findings of fact supporting the modification of plaintiff's visitation rights, we must find that the circuit court erred in determining that modification was appropriate without an evidentiary hearing and making findings of fact in support of the modification.

Reversed and remanded for dismissal.