BROWN v LOVEMAN

Docket No. 249016. Submitted November 4, 2003, at Lansing. Decided
February 12, 2004, at 9:00 A.M. Leave to appeal denied, 470 Mich
——.

Jamison W. Brown brought an action in the Washtenaw County Trial
Court, Circuit Court Division, against Courtney H. Loveman, seek-
ing custody of their minor child, Marley Loveman-Brown, and an
order preserving the status quo and restraining the defendant from
removing the child from Michigan while the issue of custody
remained undecided. The defendant counterclaimed for custody of
the child and for authority to take the child to New York, where the
defendant would work and the child would attend school. The
unmarried parties had shared physical custody of the child after
they stopped living together. The court, Timothy P. Connors, J.,
entered an order preserving the existing parenting time arrange-
ment and preventing both parties from removing the child from the
state while the custody action was pending. The court conducted a
conference style hearing in which witnesses read from prepared
statements and were not subject to direct examination or cross-
examination by counsel. Applying the factors set forth in *D'Onofrio
v D'Onofrio*, 144 NJ Super 200 (1976), and adopted in *Dick v Dick*,
147 Mich App 513 (1985), the court allowed the defendant to
remove the child from Michigan to New York and directed the par-
ties to each propose a parenting time schedule. The trial court
thereafter entered an order adopting the defendant's proposal. The
plaintiff moved for rehearing, amendment, or clarification and for a
stay of the order, arguing that the court's parenting time order sig-
nificantly changed the child's established custodial environment
without a full evidentiary hearing and the defendant's establish-
ment by clear and convincing evidence that such change is in the
child's best interest. The court entered an order dispensing with
oral argument on the plaintiff's motions and denying the motions.
The plaintiff appealed by leave granted.

The Court of Appeals *held*:

1. The trial court did not err in applying the *D'Onofrio* factors
when considering the defendant's request to change the child's resi-
dence to New York. Although the *D'Onofrio* factors had been codi-

fied at MCL 722.31 with some modifications and the trial court should have applied MCL 722.31, the trial court nonetheless addressed the pertinent factors, which are whether the prospective move has the capacity to improve the quality of life for both the relocating parent and the child, whether the move is inspired by the relocating parent's desire to defeat or frustrate visitation by the other parent and whether the relocating parent is likely to comply with visitation orders, the extent to which the parent opposing the legal residence change is motivated by the desire to secure a financial advantage with respect to a continuing support obligation, and the degree to which the court is satisfied that there will be a realistic opportunity for visitation that can provide an adequate basis for preserving the parental relationship with the parent opposing the change of legal residence if removal is allowed.

2. The trial court erred in adopting the defendant's proposed parenting time schedule, which effectively amounted to a change in the established custodial environment, without conducting a hearing on whether the defendant has shown clear and convincing evidence that such a change in the established custodial environment is in the child's best interest as provided in MCL 722.23 and 722.27. A remand is necessary for an evidentiary hearing regarding whether the defendant's proposed parenting time schedule is in the child's best interest.

3. The trial court did not abuse its discretion in conducting a conference style evidentiary hearing on the defendant's request for a change of the child's legal residence. The parties agreed, or at least did not object on the record, to that type of hearing.

4. The trial court did not abuse its discretion in allowing the change in the child's legal residence inasmuch as the trial court's findings on the change of residence were not against the great weight of the evidence presented.

5. The trial court did not err in ordering the plaintiff to pay the child's travel expenses between New York and Michigan. The plaintiff is not obligated to pay child support and there was no showing that the travel arrangements were not financially feasible or that the trial court abused its discretion.

Affirmed in part, reversed in part, and remanded for further proceedings.

PARENT AND CHILD — CUSTODY — CHANGES IN LEGAL RESIDENCE — CHANGES IN ESTABLISHED CUSTODIAL ENVIRONMENT.

A proposed change in the legal residence of a child whose custody is not governed by an existing court order but whose custody is being contested in a pending action between its parents, if the change in legal residence is more than one hundred miles distant from the

child's current legal residence, is evaluated by a court under the factors set forth in MCL 722.31(4); if the proposed change in legal residence will result in a change in the parenting time schedule of the nonrelocating parent that effectively changes the established custodial environment, the court, pursuant to MCL 722.23 and 722.27, must also consider whether the relocating parent has established by clear and convincing evidence that such change is in the child's best interest.

*Sandor M. Gelman, P.C.* (by *Sandor M. Gelman*), for the plaintiff.

*Butzel Long* (by *Edward D. Gold, T. Gordon Scupholm, II,* and *Jack D. Shumate*) for the defendant.

Before: O'CONNELL, P.J., and JANSEN and WILDER, JJ.

JANSEN, J. Plaintiff appeals by leave granted from the trial court's order adopting a parenting time schedule proposed by defendant and an order dispensing with oral argument and denying his motions for stay and for rehearing, amendment, or clarification. We affirm in part, reverse in part, and remand for further proceedings.

On July 12, 1998, Marley Loveman-Brown was born to plaintiff and defendant. The parties never married, but lived together from the time Marley was born until sometime in the fall 2001, when they began maintaining separate residences.[1] By mutual agreement, the parties shared physical custody of Marley. Defendant was expected to graduate with a master's degree in April 2003, and applied for jobs in Michigan, Ohio, Wisconsin, Minnesota, New York, and California

---

[1] Defendant testified that she moved out in spring 1999 and agreed to let plaintiff have Marley on the weekends. Defendant further testified that she moved back in the summer 1999, but then moved out permanently in fall 2001.

in the fall 2002. Plaintiff filed a complaint seeking an award of custody and a decree that Marley could not be removed from Michigan. Then, plaintiff moved for a status quo order and a referral to the friend of the court, seeking the same relief requested in the initial complaint, as well as the entry of an order requiring both parties to maintain the status quo, and restraining both parties from removing Marley from Michigan. Defendant filed a counterclaim for custody, support, and court authority to remove Marley from Michigan.

The parties appeared before the trial court and agreed to have the trial court enter a status quo order providing that until the trial court acts on the matter or until the parties reach an agreement, neither party would remove the child from the state, and that the parties would continue the existing parenting time schedule. Subsequently, the trial court entered an order directing that "the presently existing arrangements between the parties for custody and parenting time shall remain in place and the minor child shall not be removed from the State of Michigan during the pendency of this action and until further Order of the Court."

At a later date, the trial court heard opening statements from both parties, and their arguments concerning whether the *D'Onofrio*[2] factors or the best

---

[2] The "*D'Onofrio* factors" set out in *D'Onofrio v D'Onofrio*, 144 NJ Super 200, 206-207; 365 A2d 27 (1976), were adopted by Michigan courts in *Dick v Dick*, 147 Mich App 513, 517; 383 NW2d 240 (1985), and were codified (using slightly different terminology, and reordering the factors and adding an additional factor, which will be discussed in more detail later in this opinion) by the Michigan Legislature in MCL 722.31(4) on January 9, 2001. Despite the fact that the instant case occurred after MCL 722.31(4) came into effect, the trial court referred to the "*D'Onofrio* fac-

interest factors were applicable. Following the hearing, the trial court proposed the use of a "conference style" hearing, in which witnesses would be permitted to testify without being examined or cross-examined by counsel. At no time during the proceedings did either party object to the procedure. An evidentiary hearing or a conference style hearing was held, during which the witnesses generally read from prepared statements and were not subject to direct examination or cross-examination by counsel.

Defendant testified that she applied for jobs all over the country, including Michigan, Ohio, Minnesota, Wisconsin, California, and New York, and received two job offers: one in California with Ernest and Julio Gallo Winery, and one in New York for Maybelline, a division of L'Oreal, which included a starting salary of $90,000 a year, a $15,000 signing bonus, and the possibility for future advancement. Defendant testified that she researched schools in New York City to determine which school would be the best for Marley, who was to start kindergarten in September 2003. Defendant also testified that moving to New York City was not inspired by a desire to defeat or frustrate visitation by plaintiff, but was, rather, based on where she found employment that would improve her and Marley's quality of life. Defendant further testified that she would work hard to create parenting time opportunities for plaintiff and an opportunity for Marley to see her sisters.

Plaintiff is an associate at a landscape architecture firm in Michigan. Plaintiff has two daughters from a

---

tors" instead of the newly enacted MCL 722.31(4) during the pendency of the proceedings.

previous marriage, Jasmine, age ten, and Savannah, age six, who he indicates have a close relationship with Marley. Plaintiff testified that moving to New York would only have the potential to improve the quality of life for defendant, not for Marley. Plaintiff contended that if Marley went to New York, it would be impossible to maintain the same level of parenting time.

The trial court applied the *D'Onofrio* factors and stated on the record its finding that defendant sustained her burden of proof under the *D'Onofrio* factors and, thus, it allowed her to remove Marley from Michigan to New York. Then, the trial court directed each party to provide a proposed parenting time schedule within two weeks.

Defendant's proposed parenting time schedule provided that defendant would have parenting time during the school year and up to one weekend a month during the summer, and that plaintiff would have parenting time during the summer, as well as over winter break, mid-winter break, spring break, and up to two weekends a month during the school year. The trial court entered an order adopting defendant's proposed parenting time schedule, which stated "this Court finds that the parenting proposal offered by Defendant-mother is most reasonable and in the best interest of the minor child." The order allowed defendant to take Marley to New York on May 12, 2003.

Plaintiff moved for rehearing, amendment, or clarification. Plaintiff argued that the trial court's order adopting defendant's proposed parenting time schedule failed to directly address the issue of custody and, in effect, significantly changed the established custodial environment of the minor child without a full evi-

dentiary hearing and defendant's establishment by clear and convincing evidence that a change of custody is in the minor child's best interest. Additionally, plaintiff requested clarification regarding whether the trial court's order constituted a custody order that was a final order for purposes of appeal. Subsequently, the trial court entered an order dispensing with oral argument and denying plaintiff's motions for stay and for rehearing, amendment, or clarification.

On June 30, 2003, this Court: granted plaintiff's motion for immediate consideration; denied his motion to stay enforcement of the trial court's order; granted leave to appeal, limited to the issues raised on appeal, pursuant to MCR 7.205(D)(4); and on its own motion, ordered an expedited appeal.

Plaintiff's first issue on appeal is that the trial court erred in applying the standards set forth in *D'Onofrio* as opposed to those imposed by MCL 722.23, MCL 722.27, and MCL 722.31 where there had been no prior custody order and where the established custodial environment was with both parents. We agree in part and disagree in part.

An issue of statutory interpretation presents a question of law that is reviewed de novo. *Eggleston v Bio-Medical Applications of Detroit, Inc*, 468 Mich 29, 32; 658 NW2d 139 (2003); *Ronan v Michigan Public School Employees Retirement System*, 245 Mich App 645, 648; 629 NW2d 429 (2001).

Plaintiff contends that the trial court erred in applying the *D'Onofrio* factors, as opposed to the best interest factors, where there had been a prior status quo order and where the trial court determined that an established custodial environment existed with both parties. We find that the trial court did not err in

applying the *D'Onofrio* factors when considering defendant's petition to change the minor child's residence. However, once the trial court granted defendant permission to remove the minor child from the state, and it became clear that defendant's proposed parenting time schedule would effectively result in a change in the child's established custodial environment with both parties, it should have engaged in an analysis of the best interest factors, MCL 722.23, to determine whether defendant could prove, by clear and convincing evidence, that the removal and consequent change in established custodial environment and parenting time was in the child's best interest.

The trial court evaluated the evidence under the four factors set forth in *D'Onofrio*, *supra*, as previously adopted by this Court. See, e.g., *Overall v Overall*, 203 Mich App 450, 458; 512 NW2d 851 (1994); *Bielawski v Bielawski*, 137 Mich App 587; 358 NW2d 383 (1984). Under the *D'Onofrio* test, the trial court must consider

(1) whether the prospective move has the capacity to improve the quality of life for both the custodial parent and the child; (2) whether the move is inspired by the custodial parent's desire to defeat or frustrate visitation by the noncustodial parent and whether the custodial parent is likely to comply with the substitute visitation orders where he or she is no longer subject to the jurisdiction of the courts of this state; (3) the extent to which the noncustodial parent, in resisting the move, is motivated by the desire to secure a financial advantage in respect of a continuing support obligation; and (4) the degree to which the court is satisfied that there will be a realistic opportunity for visitation in lieu of the weekly pattern which can provide an adequate basis for preserving and fostering the parental relationship with the noncustodial parent if removal is allowed. [*Overall*, *supra* at 458-459; see also *D'Onofrio*, *supra* at 206-207.]

In applying the *D'Onofrio* factors, the trial court determined, with regard to the first factor, that moving to New York had the capacity to improve the quality of life for defendant and Marley because defendant "has been very determined and organized, and frankly it's admirable what she's been able to accomplish. But, more importantly, the Court is impressed by [defendant's] desire to be self-sufficient and to provide for herself and her child." The trial court did not think that factor number two was being debated, and stated that it was "convinced that this is not a desire to defeat or frustrate visitation," and was convinced that defendant would follow its orders if it allowed her to move. With regard to the third factor, the trial court did not believe that plaintiff's resistance to the move was motivated by a desire to secure a financial advantage. Specifically, with regard to the fourth factor, the trial court stated:

> This child . . . will continue to be exposed to changing conditions. The fact of the matter is, she does have a relationship with half-siblings who also have a different mother, have a different household. There is currently a fiancée apparently in the house and there's a whole . . . dynamic that's going on, and the child is adjusting to all of those things. . . .
>
> I did think the comment of [defendant's mother] was interesting to say, well, we can't have change, yet we have to preserve this very dynamic relationship, when in fact it's changing all the time in [plaintiff's] house. And, I'm not putting a value judgment on that. I'm just simply saying you have to be consistent. You can't say exposure to New York City . . . is clearly not good for the child, but we have to preserve sort of the fluidity of what continues to happen here. . . . I am satisfied that we can come up with a realistic opportunity for visitation in lieu of the weekly pattern.

> To that end, the Court finds that you have sustained your burden of proof and the Court will allow the minor child to move.

In addition, the trial court directed each party to provide a proposed parenting time schedule within two weeks.

In *Dick, supra* at 517, this Court held that the *D'Onofrio* factors are the appropriate standard to use when evaluating a petition to remove a minor child from the state. This is different than the standard used when evaluating a petition to modify a custody award. When a modification of custody (either by changing custody or parenting time) would change the established custodial environment of a child, the moving party must show by clear and convincing evidence that it is in the child's best interest. *Phillips v Jordan*, 241 Mich App 17, 25; 614 NW2d 183 (2000).

Plaintiff contends that the trial court should have decided if the move was in the child's best interest, pursuant to MCL 722.27(1)(c). MCL 722.27(1)(c) provides, in pertinent part:

> The court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child.

In determining that the *D'Onofrio* factors were the appropriate standard to apply when a party is seeking to move a minor child to another state, as opposed to the best interest factors, this Court in *Dick, supra* at 517, reasoned:

> We are not concerned with a true change of custody. A parent with joint legal custody is seeking to move to

another state. In many other cases, the party requesting to change residence had both legal and physical custody. Furthermore, in factor number one of the *D'Onofrio* factors . . . elements of the "best interest of the child" test are present. The trial court must of necessity measure the impact of the move on the children.

On January 9, 2001, the Michigan Legislature enacted MCL 722.31, a statutory version of the *D'Onofrio* factors, for trial courts to consider before permitting a legal residence change of more than one hundred miles.[3] MCL 722.31 provides, in pertinent part:

(1) A child whose parental custody is governed by court order has, for the purposes of this section, a legal residence with each parent. Except as otherwise provided in this section, a parent of a child whose custody is governed by court order shall not change a legal residence of the child to a location that is more than 100 miles from the child's legal residence at the time of the commencement of the action in which the order is issued.

(2) A parent's change of a child's legal residence is not restricted by subsection (1) if the other parent consents to, or if the court, after complying with subsection (4), permits, the residence change. . . .

\*          \*          \*

(4) Before permitting a legal residence change otherwise restricted by subsection (1), the court shall consider each

___

[3] The primary differences between the *D'Onofrio* factors and MCL 722.31(4)(a)-(e) are: the change of the use of "custodial/noncustodial parent" to "relocating parent" and "parent" generally; the ordering of the factors (*D'Onofrio* factors [3] and [4] are MCL 722.31[d] and [c], respectively); the addition of a fifth factor, MCL 722.31(e), concerning domestic violence; and the broadening of the application of the factors from a party seeking to remove their child from the state, to a party seeking to change their child's legal residence to a distance of more than one hundred miles.

of the following factors, with the child as the primary focus in the court's deliberations:

(a) Whether the legal residence change has the capacity to improve the quality of life for both the child and the relocating parent.

(b) The degree to which each parent has complied with, and utilized his or her time under, a court order governing parenting time with the child, and whether the parent's plan to change the child's legal residence is inspired by that parent's desire to defeat or frustrate the parenting time schedule.

(c) The degree to which the court is satisfied that, if the court permits the legal residence change, it is possible to order a modification of the parenting time schedule and other arrangements governing the child's schedule in a manner that can provide an adequate basis for preserving and fostering the parental relationship between the child and each parent; and whether each parent is likely to comply with the modification.

(d) The extent to which the parent opposing the legal residence change is motivated by a desire to secure a financial advantage with respect to a support obligation.

(e) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(5) Each order determining or modifying custody or parenting time of a child shall include a provision stating the parent's agreement as to how a change in either of the child's legal residences will be handled. . . .

Clearly, the trial court should have applied and referred to MCL 722.31 rather than relying on the *D'Onofrio* test. However, in applying the *D'Onofrio* factors, the trial court was addressing the pertinent factors of MCL 722.31.[4] In the present case, it appears

---

[4] We note that the *D'Onofrio* factors do not, specifically, consider domestic violence as MCL 722.31(1)(e) does, but also note that this is insignificant because the only indication of domestic violence was that of plaintiff toward defendant.

that the Michigan Legislature intended MCL 722.31(4) to be judicially construed as *D'Onofrio* is in New Jersey to the extent that the language is the same, but that the removal of the "custodial parent" and "noncustodial parent" language and its replacement with "relocating parent" and "parent" apparently signified our Legislature's intent to make the statute applicable even in cases where both parents have joint legal and physical custody, and not just where the parent with primary physical custody wants to relocate, changing the minor child's legal residence. Stated another way, the Michigan Legislature apparently did not intend that sole physical custody be a prerequisite to petitioning to change a minor child's legal residence.[5]

There is no authority for the proposition that the parent seeking to relocate the minor child must have sole physical custody. The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *Gladych v New Family Homes, Inc*, 468 Mich 594, 597; 664 NW2d 705 (2003). As noted above, the Legislature's change of the wording of the statute from "custodial parent"

---

[5] The present case is unusual as the typical progression of events is that one of the parties petitions for sole physical custody; the trial court determines whether there is an established custodial environment with one or both of the parties; if there is no established custodial environment, the party seeking the change of custody need only prove by a preponderance of the evidence that the change is in the child's best interest; if there is an established custodial environment, the party seeking the change of custody must prove by clear and convincing evidence that the change is in the child's best interest; if the party seeking the change meets its burden of proof under the best interest factors, MCL 722.23, sole physical custody is then awarded, and custody of the minor child is changed; the sole custodial parent then seeks to move more than 100 miles away, and brings a petition to change the legal residence of the minor child; the trial court then considers the factors set out in MCL 722.31 in determining whether to permit the change in residence.

and "noncustodial parent" (found in *D'Onofrio, supra*) to "relocating parent" and "parent" signifies the intention that being the sole physical custodial parent is not a prerequisite to petitioning the trial court for permission to relocate. Once the intention of the Legislature is discovered, it must prevail regardless of any conflicting rule of statutory construction. *Green Oak Twp v Munzel*, 255 Mich App 235, 240; 661 NW2d 243 (2003). Thus, we find that the Legislature intended that a parent who shares joint legal or physical custody may petition the court to relocate a minor.

Next, we address plaintiff's argument that the trial court erred in applying the *D'Onofrio* factors, as opposed to the best interest factors, where there had been a prior status quo order, and where the trial court determined that an established custodial environment existed with both parents. In *Scott v Scott*, 124 Mich App 448, 450; 335 NW2d 68 (1983), this Court addressed a similar situation in which the parties were divorced and had joint custody of their two minor children. The defendant petitioned the trial court to remove the minor children to Ohio, and the plaintiff opposed the defendant's request and petitioned the trial court to grant him sole physical custody of the children. *Id.* The trial court granted the defendant's petition to move out of state, and the plaintiff appealed, arguing that "by allowing defendant to move to Ohio, plaintiff is essentially deprived of his joint custody of the children and, accordingly, sole custody should be granted to him." *Id.* at 450-451. This Court found "no basis for reversing the trial court's denial of plaintiff's petition for sole custody," reasoning that "[j]oint custody was originally granted,

presumably in the best interests of the children, and
the trial court correctly concluded that joint custody
should continue." *Id.* at 451, citing *Longhi v Longhi*,
119 Mich App 41; 325 NW2d 617 (1982). This Court, in
*Scott, supra* at 452-453, analyzed the trial court's deci-
sion, which relied on the *D'Onofrio* factors, as
follows:

> Despite the fact that *D'Onofrio* was a case dealing with
> removal of children by a sole custodial parent, we believe
> that it is applicable to the instant case. The *D'Onofrio* test,
> as this Court noted in *Henry* [*v Henry*, 119 Mich App 319,
> 323; 326 NW2d 497 (1982)] focuses on the best interest of
> the custodial parent and child. Although defendant is not
> the sole custodial parent, she and her present husband
> have, by mutual agreement, physical custody of the children
> for the school year, approximately 36 weeks. Plaintiff has
> custody during the summer, spring and Christmas vaca-
> tions, some weekends and shared weeks, approximating 16
> weeks.

This Court went on to conclude that the trial court
did not abuse its discretion in granting the defen-
dant's petition to move to Ohio. *Id.* at 453.

We find that the trial court properly determined at
the outset that the *D'Onofrio* factors, now provided in
MCL 722.31, were the appropriate inquiry when ruling
on defendant's petition for change of domicile, as
opposed to the best interest factors that are appropri-
ate to consider in ruling on a request for a change of
custody. Because it is possible to have a domicile
change that is more than one hundred miles away
from the original residence without having a change
in the established custodial environment, the trial
court did not err in solely applying the *D'Onofrio* fac-
tors to the change of domicile issue. However, once

the trial court granted defendant permission to remove the minor child from the state, and it became clear that defendant's proposed parenting time schedule would effectively result in a change in the child's established custodial environment with both parties, it should have engaged in an analysis of the best interest factors, MCL 722.23, to determine whether defendant could prove, by clear and convincing evidence, that the removal and consequent change in established custodial environment and parenting time was in the child's best interest. The subsequent change of the established custodial environment will be addressed, *infra*, but this change did not arise until after the trial court had ruled on the change of domicile motion. Because the change of an established custodial environment did not arise until the defendant's proposed parenting time schedule was entered, we find that the trial court properly addressed the domicile change using the *D'Onofrio* factors.

Plaintiff's second issue on appeal is that the trial court erred in adopting the parenting time schedule proposed by defendant, which amounted to a change of the established custodial environment without holding a hearing requiring that there be a showing by clear and convincing evidence that the change is in the child's best interest. We agree.

We review questions of law de novo. See *Burba v Burba (After Remand)*, 461 Mich 637, 647; 610 NW2d 873 (2000). This Court also reviews de novo an order regarding parenting time, but will not reverse the order unless the trial court made findings of fact against the great weight of the evidence, committed a palpable abuse of discretion, or committed a clear

legal error. *Mauro v Mauro*, 196 Mich App 1, 4; 492 NW2d 758 (1992).

The trial court erred in adopting defendant's proposed parenting time schedule, which effectively amounted to a change in the established custodial environment, without holding a hearing requiring that defendant prove by clear and convincing evidence that the change of domicile and consequent change in parenting time, which necessarily changed the established custodial environment, was in the minor child's best interest.

Defendant's proposed parenting time schedule provided that defendant would have parenting time during the school year and one weekend a month during the summer, and that plaintiff would have parenting time during the summer, as well as over winter break, mid-winter break, spring break, and two weekends a month during the school year. The trial court adopted defendant's proposed parenting time schedule, finding that the proposal was "most reasonable and in the best interest of the minor child."

Plaintiff argues that MCL 722.27 and MCL 722.31 can and should be read together as requiring the trial court to conduct a best interest of the child analysis because the change, in effect, changed an established custodial environment. This Court has commented that "[t]he primary goal of statutory interpretation is to ascertain and give effect to the intent of the Legislature in enacting a provision," and that "statutory language should be construed reasonably, keeping in mind the purpose of the statute." *Nat'l Center for Mfg Sciences, Inc v Ann Arbor*, 221 Mich App 541, 545; 563 NW2d 65 (1997), citing *Farrington v Total Petroleum, Inc*, 442 Mich 201, 212; 501 NW2d 76 (1993). "In

discovering legislative purpose, statutes relating to the same subject or sharing a common purpose are in pari materia and must be read together." *Ansell v Dep't of Commerce (On Remand)*, 222 Mich App 347, 355; 564 NW2d 519 (1997).

MCL 722.27 and MCL 722.31 (the *D'Onofrio* factors) both relate to minor children and provide guidance concerning issues of custody, parenting time, and change in legal residence. Both statutes share the common purpose of guiding the courts to an outcome that is in the best interests of minor children.[6] MCL 722.27 focuses on the best interests of the child, and MCL 722.31(4) provides that the factors are to be analyzed "with the child as the primary focus."

Plaintiff argues that MCL 722.27 is intended to be applied in tandem with other statutes affecting children whenever the court enters an order that would change a child's custodial environment, and that it is not limited to any particular circumstance nor does it exclude any circumstances as it applies generally whenever there is an issue of a change of custodial environment. "Once the intention of the Legislature is discovered, it must prevail regardless of any conflicting rule of statutory construction." *Title Office, Inc v Van Buren Co Treasurer*, 249 Mich App 322, 326; 643 NW2d 244 (2002). In *Deschaine v St Germain*, 256 Mich App 665, 671 n 9; 671 NW2d 79 (2003), this Court, while noting MCL 722.31, indicated that the statutes appearing in the Child Custody Act of 1970

---

[6] The Child Custody Act of 1970, MCL 722.21 *et seq.*, governs child custody disputes between parents, and the purpose of the act is to promote the best interest of children, and it is to be liberally construed. MCL 722.26(1), *Frame v Nehls*, 452 Mich 171, 176; 550 NW2d 739 (1996); *Harvey v Harvey*, 257 Mich App 278, 291; 668 NW2d 187 (2003).

have the same purpose of promoting the best interests of the children and, thus, these statutes "may be interpreted consistent with each other, or in pari materia."

In *DeGrow v DeGrow*, 112 Mich App 260, 269-270; 315 NW2d 915 (1982), this Court held:

> The Legislature, in enacting the Child Custody Act, sought to spare children from the detrimental effects of constantly being shuffled between parents involved in ongoing custody battles. *Becker v Becker*, 95 Mich App 370; 290 NW2d 149 (1980). In furtherance of this policy the Legislature required "clear and convincing" evidence to support change of child custody petitions.
>
> A change in custody is not to be easily facilitated, absent those cases where the factors clearly dictate the best interests of the child will be served by a switch in custody. Recently, the Supreme Court in *Baker v Baker* [411 Mich 567, 576-578; 309 NW2d 532 (1981)] reaffirmed the commitment to rigidly adhere to the "clear and convincing" standard set forth in the statute and overturn a decision only when a different outcome is mandated by the great weight of the evidence.

It would be illogical and against the intent of the Legislature to apply MCL 722.31 without considering the best interests of the minor child, if the change in legal residence would effectively change the established custodial environment of the minor. *Ansell, supra* at 355. Otherwise, where parents have joint physical custody and one party seeks to change the legal residence of the child (which would effectively change the established custodial environment), the party would only be subject to the lesser preponderance of the evidence burden required by MCL 722.31. The Legislature could not have intended MCL 722.27 and MCL 722.31 to be applied completely indepen-

dently of each other where the result would allow a party seeking to change domicile (and in effect change the established custodial environment) to circumvent its burden of proof by clear and convincing evidence that the change is in the child's best interest.

This Court has recognized that a change in domicile will almost always alter the parties' parenting time schedule to some extent and has, thus, held that the parenting time schedule need not be equal to the prior parenting time schedule in all respects. *Mogle v Scriver*, 241 Mich App 192, 204; 614 NW2d 696 (2000). Parenting time is granted if it is in the best interest of the child and in a frequency, duration, and type reasonably calculated to promote strong parent-child relationships. MCL 722.27a(1). But this Court has held that if a requested modification in parenting time amounts to a change in the established custodial environment, it should not be granted unless the trial court is persuaded by clear and convincing evidence that the change would be in the best interest of the child. *In re Stevens*, 86 Mich App 258, 270; 273 NW2d 490 (1978).

A custodial environment is established if

> over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered. [MCL 722.27(1)(c).]

In the instant case, the trial court determined that an established custodial environment existed with both parties and both parties agree that an environment had been established where each parent had fifty per-

cent parenting time. The issue then becomes whether defendant's proposed parenting time schedule effectively amounted to a change in the established custodial environment so as to require an inquiry into the best interest factors, where defendant would have to prove by clear and convincing evidence that the proposed change was in Marley's best interest.

It is possible to have a change of domicile while having both parents retain joint physical custody without disturbing the established custodial environment. See *Scott, supra*. In *Scott, supra* at 450-453, both parents had joint physical custody of their children, the defendant had custody of the children during the school year, and the plaintiff had custody of the children during the summer, as well as during spring and winter vacations, and some weekends. This Court affirmed the trial court's grant of the defendant's petition to move the children to Ohio and denial of the plaintiff's motion for sole physical custody. *Id.* Where the parties retained the same parenting time schedule despite the change in domicile, this Court did not believe that it deprived the plaintiff of his joint custody of the children. *Id.* at 451.

In the instant case, however, it appears that the modification from equal parenting time to defendant having parenting time during the school year and plaintiff having parenting time in the summer necessarily would amount to a change in the established custodial environment, requiring analysis under the best interest factor framework. See *Dowd v Dowd*, 97 Mich App 276, 277; 293 NW2d 797 (1980).

In *Dowd, supra* at 277, the trial court entered a custody order providing that the parties would have joint custody of their minor children, with the plain-

tiff having physical custody during the summer and the defendant having physical custody during the school year. Thereafter, the plaintiff petitioned for year-round physical custody of the children. *Id.* at 278. The trial court entered an order giving each party physical custody of the children for alternating three-month periods; this reduced the defendant's period of custody from nine to six months during the year. *Id.* The defendant appealed, and this Court reversed the trial court's order, holding that the trial court must evaluate the best interest factors before deciding a custody or parenting time dispute. *Id.* at 278-279. This Court reasoned:

> It is clear from this record that the paramount concern of the learned trial judge was the children's well being. However, while stating that it was ruling in the best interest of the children and pointing out generally the environmental factors considered, the trial court failed to make the required analysis of the statutory factors. Each of these factors should have been specifically evaluated and a conclusion on each stated. [*Id.* at 279.]

Similarly, in the present case, defendant's proposed parenting time schedule resulted in a modification of plaintiff's parenting from being equal with defendant to being reduced to approximately three months out of the year, as opposed to defendant's nine months.

To the extent that defendant argues that the trial court implicitly made the best interests findings, we note that this Court has held:

> In light of the complete absence of findings of fact supporting the modification of plaintiff's visitation rights, we must find that the circuit court erred in determining that modification was appropriate without an evidentiary hearing and making findings of fact in support of the modifica-

tion. [*Bivins v Bivins*, 146 Mich App 223, 234; 379 NW2d 431 (1985).]

In addition, we note that the *D'Onofrio* factors do not fully take into account the best interests of the child because rather than focusing solely on the best interests of the child, the *D'Onofrio* test focuses on what is in the best interest of the new family unit, i.e. the parent and child. *Henry, supra* at 324; *D'Onofrio, supra* at 205-206; see *Dehring v Dehring*, 220 Mich App 163, 165; 559 NW2d 59 (1996).

Therefore, in the present case, where defendant's proposed parenting time schedule effectively amounted to a change in Marley's established custodial environment, the trial court was required to conduct an evidentiary hearing wherein defendant would have the opportunity to prove by clear and convincing evidence that the proposed change was in Marley's best interest. Failure to do so amounted to clear error, and remand is necessary for an evidentiary hearing, at which time the trial court must articulate its findings of fact on the relevant best interest of the child factors, and determine whether defendant's proposed parenting time schedule is in the best interest of the minor child.[7]

Plaintiff's next issue on appeal is that the trial court erred in granting defendant's request for a change of

---

[7] We are not contending that the use of both the *D'Onofrio* factors and the best interest factors are necessary in all situations. Rather, it is only in a situation where both parents share joint physical custody, one parent is granted permission to relocate more than 100 miles away, and the relocation would result in a change in parenting time so great as to necessarily change the established custodial environment that an inquiry into the best interest factors is necessary for the relocating parent to prove by clear and convincing evidence that the change is in the minor child's best interest.

domicile before holding a full evidentiary hearing on the parties' complaints for custody, thus prejudicing plaintiff's complaint for custody, which denies him custody without due process of law. We disagree.

In *Providence Hosp v Nat'l Labor Union Health & Welfare Fund*, 162 Mich App 191, 194-195; 412 NW2d 690 (1987), this Court stated:

> Generally, this Court will not review issues that were not raised and decided by the trial court. However, there are exceptions to this general rule. This Court will review issues not raised below if a miscarriage of justice will result from a failure to pass on them, or if the question is one of law and all the facts necessary for its resolution have been presented, or where necessary for a proper determination of the case. [Citations omitted.]

Plaintiff did not object to the conference style hearing employed below and, therefore, the issue is unpreserved. Because review of this issue is necessary for a proper determination of the case, we will address it.

A trial court's decision on whether to conduct an evidentiary hearing is reviewed for an abuse of discretion. *Bielawski, supra* at 592. The trial court did not abuse its discretion in conducting a conference style hearing on defendant's motion for change of domicile, where there were no objections to this format for the evidentiary hearing.

In *Bielawski, supra* at 592, this Court commented:

> We do not believe in every instance that a trial court is required to conduct an evidentiary hearing in considering a motion to remove a minor child from the jurisdiction of the court. . . .
>
> In deciding whether or not a trial court should hold an evidentiary hearing, the court should first determine

whether there exist contested factual questions that must be resolved before a court can make an informed decision on whether or not to grant the motion.

The trial court did not abuse its discretion in conducting a conference style evidentiary hearing on defendant's petition for a change of domicile because the parties apparently agreed, or at the very least did not object on the record, to this type of hearing.[8] But, as noted, when it became clear that defendant's proposed order for parenting time would result in a change in the established custodial environment of the minor child, the trial court should have conducted a full evidentiary hearing to determine if defendant could prove by clear and convincing evidence that the change was in the best interests of Marley, and should have stated its findings of fact on the record. Therefore, remand is appropriate for a full evidentiary hearing on the matter.

Plaintiff also contends that the trial court erred in permitting a change of domicile when defendant failed to meet the requirements of the preponderance of the evidence test. We disagree.

"To support a removal petition, the moving party must show that removal is warranted by a preponderance of the evidence." *Overall, supra* at 459. This Court reviews a trial court's findings in applying the *D'Onofrio* test under the great weight of the evidence standard. *Dick, supra* at 516. This Court reviews a trial court's decision on a petition to change the domicile of a minor child for abuse of discretion. *Mogle, supra* at 202. "An abuse of discretion is found only in

---

[8] Judge O'CONNELL would require that each party state on the record that they have no objection to a conference style evidentiary hearing.

extreme cases in which the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will or the exercise of passion or bias." *Phillips, supra* at 29, citing *Dacon v Transue,* 441 Mich 315, 329; 490 NW2d 369 (1992).

Plaintiff asserts that the trial court erred in permitting defendant to remove Marley from Michigan to New York, because defendant did not meet her burden of demonstrating, by a preponderance of the evidence, that removal was warranted. We find that the trial court's findings of fact were not against the great weight of the evidence, and it did not abuse its discretion in allowing defendant to remove Marley from Michigan.

With regard to the first *D'Onofrio* factor (corresponding to MCL 722.31[4][a]), the trial court found that defendant's job opportunity and move to New York had the potential to improve both Marley's and defendant's quality of life. Plaintiff argues that the only positive evidence regarding an opportunity for improvement related to defendant's higher earnings and the opportunities available in New York, and that there was no testimony demonstrating how the move had the capacity to improve Marley's life. But this Court has held that a substantial increase in income that will elevate the quality of life of the relocating parent and child supports a finding that a party has met its burden of proof under the first *D'Onofrio* factor. See *Bielawski, supra* at 593.[9] Moreover, the bur-

---

[9] Additionally, this Court has recognized, as the trial court did in the instant case, that the cultural advantages of relocation also lend support to the first *D'Onofrio* factor. *Hunt v Reed,* unpublished opinion per curiam of the Court of Appeals, issued June 27, 1997 (Docket No. 193101). We view this case as persuasive, because of the limited case law, but note

den of proof by a preponderance of the evidence "recognizes the increasingly legitimate mobility of our society." *Henry, supra* at 324.

Plaintiff also argues that the trial court appeared to ignore Marley's bond with his two daughters from a previous marriage. However, the trial court commented that "there is no question that when there is change, there is what can be perceived as loss, because things change. But, as things change, there's also the opportunity for new developments or new ways to improve things." This Court has noted that "[t]he sibling bond and the potentially detrimental effects of physically severing that bond should be seriously considered in custody cases where the children likely have already experienced serious disruption in their lives as well as a sense of deep personal loss." *Wiechmann v Wiechmann*, 212 Mich App 436, 439-440; 538 NW2d 57 (1995). The trial court believed that defendant's increased earning capacity and the cultural advantages of New York City had the capacity to improve the life of defendant and Marley more than remaining in Ann Arbor and retaining Marley's bond with plaintiff's children. The trial court's findings of fact are not against the great weight of the evidence.

With regard to the second *D'Onofrio* factor (corresponding to MCL 722.31[4][b]), the trial court found that there was no evidence from the parties' joint custody arrangement in the past to suggest that the move was inspired by defendant's desire to defeat plaintiff's parenting time rights or that she would not comply

---

that unpublished opinions are not binding under the rule of stare decisis. MCR 7.215(C)(1).

with the trial court's order for parenting time. In addition, defendant indicated she would encourage a relationship between plaintiff and Marley and would make sure plaintiff received his share of parenting time.

With regard to the third *D'Onofrio* factor (corresponding to MCL 722.31[4][d]), the trial court found that plaintiff's resistance to the move was not motivated by a desire to secure a financial advantage. There appears to be no dispute regarding either the second or third factor.

With regard to the fourth *D'Onofrio* factor (corresponding to MCL 722.31[4][c]), the trial court was satisfied that there would be a realistic opportunity for parenting time that would provide an adequate basis for preserving and fostering the parental relationship with plaintiff. Plaintiff argues that the parenting time schedule adopted by the trial court in no way preserves or fosters the relationship between Marley and her father, but rather inhibits and restricts it.

It has been noted that to satisfy the fourth *D'Onofrio* factor, "one must start with the premise that implicit in this factor is an acknowledgment that weekly visitation is not possible when parents are separated by state borders." *Costantini v Costantini*, 446 Mich 870, 873 (1994) (RILEY, J., concurring). This Court has held that "[u]nder the fourth factor, the visitation plan need not be equal to the prior visitation plan in all respects. It only need provide a realistic opportunity to preserve and foster the parental relationship previously enjoyed by [the non-relocating parent]." *Mogle, supra* at 204. The trial court believed that the parties could create a realistic parenting time schedule that would preserve and foster the parental

relationship between the minor child and plaintiff, and adopted defendant's proposed parenting time schedule in which the minor child would be with defendant during the school year, and be with plaintiff during the summer, as well as during school vacations, and on up to two weekends a month. The trial court's finding was not against the great weight of the evidence.

The trial court determined that defendant sustained her burden of proof, and stated that it would allow her to move Marley from Michigan to New York. The trial court's findings of fact were not against the great weight of the evidence, and the trial court's decision to grant defendant's petition for change of domicile was not an abuse of discretion. The result is not so palpably and grossly violative of fact and logic that it evidences a perversity of will or the exercise of passion or bias. See *Phillips, supra* at 29

Plaintiff's final issue on appeal is that the trial court erred in ordering him to pay all expenses relating to the travel occasioned by defendant's unilateral decision to move when the evidence indicated defendant would be earning nearly as much as plaintiff. We disagree. A trial court's determination regarding payment of travel expenses is reviewed for an abuse of discretion. See *Overall, supra.*

Plaintiff contends that the trial court erred in ordering plaintiff to pay all the minor child's travel expenses between New York and Michigan. Defendant argues that in light of the fact that she does not intend to seek child support from plaintiff, it is appropriate that the cost of the minor child's travel expenses be plaintiff's sole responsibility.

Our Supreme Court has indicated that, "it is imperative that a court consider the feasibility of this plan from a practical and financial viewpoint," and that "the court should . . . consider the age of the child . . . for judging the feasibility of travel and analyze what financial constraints would be placed on the parents." *Costantini, supra* at 873-874. There is no showing that the arrangement was not financially feasible. The trial court did not order plaintiff to pay any kind of child support, and there is no showing that it abused its discretion in "the fashioning of the arrangement" requiring plaintiff to pay the travel costs. See *Overall, supra* at 460.

The trial court did not clearly err in applying the *D'Onofrio* factors when considering defendant's petition to change Marley's residence from Michigan to New York. But once the trial court granted defendant permission to remove the minor child from the state, defendant's proposed parenting time schedule effectively amounted to a change in the child's established custodial environment. Once there was a change of the established custodial environment, the trial court was required to conduct an evidentiary hearing wherein defendant would have the opportunity to prove by clear and convincing evidence that the proposed change was in the minor child's best interest. Failure to require such a showing was error and we remand for an evidentiary hearing, at which time the trial court must articulate its findings of fact on the relevant best interest of the child factors, and determine whether defendant can prove by clear and convincing evidence that her proposed parenting time schedule is in the best interest of the minor child.

We affirm the trial court's application of the *D'Onofrio* factors and grant of defendant's petition to remove the minor child, we reverse trial court order adopting defendant's proposed parenting time schedule, and we remand for a full evidentiary hearing to determine whether defendant can prove by clear and convincing evidence that her proposed parenting time schedule, which amounts to a change in the child's established custodial environment, is in the child's best interest. We do not retain jurisdiction.