*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CARNIGEE TRUESDALE,

Plaintiff-Appellee,

v

WILLIAM KENNETH HOWARD,

Defendant-Appellant.

UNPUBLISHED
September 22, 2022

No. 360205
Oakland Circuit Court
Family Division
LC No. 2016-847927-DM

Before: RONAYNE KRAUSE, P.J., and JANSEN and SWARTZLE, JJ.

PER CURIAM.

In this custody dispute, defendant appeals as of right the trial court's January 19, 2022 order declining to modify custody, but instead, changing parenting time and the existing school enrollment for the parties' minor children. On appeal, defendant contends that the trial court erred because (1) the modifications to parenting time and school enrollment altered the children's established custodial environment and were not supported by clear and convincing evidence, and (2) the court improperly evaluated the children's best interests. We vacate the trial court's order and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

The parties share two minor children, AH and MH. The parties divorced in 2017 pursuant to a consent judgment of divorce granting them joint legal custody and equal parenting time. They agreed to a 2-2-3 parenting-time schedule, with each parent receiving the children for two separate two-day periods each week and the remaining three days of each week alternating between the parties. After the divorce, defendant moved to Southfield, about 45 minutes away from the family home in Oxford, where plaintiff remained.

Disputes between the parties have been ongoing since the divorce, with each of them filing numerous competing motions concerning custody, parenting time, and the children's school enrollment. Numerous Child Protective Services investigations were made against defendant for allegations of physical or mental abuse, but only two were substantiated—one for corporal punishment and one for threatening the children with a belt and taking them to an age-inappropriate

-1-

reenactment of slavery. This resulted in one short suspension of defendant's parenting time in February 2018, which was reinstated by agreement of the parties.

In February 2019, defendant moved to enroll the children in Avondale schools, a district equidistant between the parties' residences, and plaintiff responded by cross-moving for primary physical custody, to establish the children's residence and school enrollment in Oxford, and for defendant to have alternating weekends and holiday parenting time. The trial court granted defendant's request, and the children were enrolled in Avondale. However, for the 2019-2020 school year, one child was waitlisted for Avondale schools, the parties each filed competing emergency motions, and the trial court ordered that the children temporarily attend Oxford schools pending acceptance at Avondale. When plaintiff later filed a motion for the children to remain in Oxford schools, the court denied her request, ordering the children to be enrolled in Avondale pursuant to the previous order.

Relevant to this appeal, plaintiff filed a new motion to change custody, and defendant moved to readjust the parenting-time schedule from 2-2-3 to alternating weeks. Plaintiff again moved to enroll the children in Oxford schools, and defendant opposed the motion, relying on the last court order enrolling the children in Avondale. An evidentiary hearing was held, and the court entered an order denying plaintiff's motion to change custody, but altering the parenting-time schedule, and ordering the children to be enrolled in Oxford schools.

The court determined that the children had an established custodial environment with both parents, thus requiring any change in custody to be supported by clear and convincing evidence. The court concluded that plaintiff failed to meet her burden to show that a change in custody was in the children's best interests by clear and convincing evidence. However, the court concluded that the children's best interest did warrant, by a preponderance of the evidence, a change to the parenting-time schedule. Thus, it ordered that during the school year, defendant had parenting time every other weekend with the possibility of additional time on Mondays or Fridays that the children did not have school and plaintiff was working, as well as parenting time every Wednesday evening. The remaining time the children would be with plaintiff, and the parties would alternate week by week during the summer.

The court also determined that the children's best interests supported reenrolling them in Oxford schools. The court did not believe that this change would alter the children's established custodial environments with both parties, making the applicable standard of proof a preponderance of the evidence. The court reasoned that plaintiff met this burden by evidence that the children were negatively impacted by attending Avondale schools, noting the reduced travel time and increased opportunity for community involvement and social interaction in Oxford schools. Defendant now appeals.

## II. STANDARD OF REVIEW

"Orders concerning parenting time must be affirmed on appeal unless the trial court's findings were against the great weight of the evidence, the court committed a palpable abuse of discretion, or the court made a clear legal error on a major issue." *Shade v Wright*, 291 Mich App 17, 20-21; 805 NW2d 1 (2010) (quotation marks and citation omitted). "Under the great weight of the evidence standard, this Court should not substitute its judgment on questions of fact unless

the facts clearly preponderate in the opposite direction." *Id*. at 21. In contrast, a court abuses its discretion when its decision "is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Id*. (quotation marks and citation omitted). Lastly, clear legal error occurs "when the trial court errs in its choice, interpretation, or application of the existing law." *Id*. (quotation marks and citation omitted).

## III. ANALYSIS

Defendant first argues that the trial court erred in its modification of parenting time because the changes altered the children's established custodial environment but were not supported by clear and convincing evidence. We agree.

When a modification to parenting time would alter a child's established custodial environment, there must be clear and convincing evidence that the change is in the child's best interests. *Id*. at 23, citing MCL 722.27(1)(c); see also *Lieberman v Orr*, 319 Mich App 68, 84; 900 NW2d 130 (2017) ("[W]hen [a] proposed parenting-time change alters the established custodial environment, the proposal is essentially a change in custody, and *Vodvarka* [*v Grasmeyer*, 259 Mich App 499; 675 NW2d 847 (2003)][1] governs."). If a proposed change would not alter the custodial environment, however, the applicable burden of proof is a preponderance of the evidence. *Shade*, 291 Mich App at 23. These rules apply to all important decisions impacting a child's welfare, including decisions regarding a change of schools. See *Pierron v Pierron*, 486 Mich 81, 85-86, 92-93; 782 NW2d 480 (2010).

A child's established custodial environment is the environment in which "over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort." MCL 722.27(1)(c); *Pierron*, 486 Mich at 85-86. According to the Michigan Supreme Court, "[w]hile an important decision affecting the welfare of the child may well require adjustments in the parenting time schedules, this does not necessarily mean that the established custodial environment will have been modified." *Pierron*, 486 Mich at 86.

Defendant argues that the trial court's modification to parenting time and associated change in schools were erroneous because the changes "necessarily impacted" the children's established custodial environment but were not supported by clear and convincing evidence. Defendant notes that the parties had long enjoyed equal parenting time that allowed them both to be involved in the children's day-to-day guidance. He also notes his history of tutoring the children in math and science, and that the trial court's earlier ruling for enrollment in Avondale schools was based on the district's proximity for both parties and its ability to facilitate defendant's increased involvement in the children's education. In contrast, defendant asserts that the court's most recent

---

[1] See *Vodvarka*, 259 Mich App at 509 (changes in custody altering a child's established custodial environment must be supported by clear and convincing evidence). *Vodvarka* also provides a detailed analysis of the threshold requirement that courts find proper cause or a change in circumstances warranting modification to a custody arrangement before moving to evaluate a child's custodial environment and best interests, *id*. at 509-517, though this requirement is not specifically at issue in this appeal.

changes to parenting time and school enrollment rendered him unable to take the children to and from school and reduced his parenting time "from approximately 182 overnights under the prior order to approximately 62 overnights, a reduction of 120 days per year." And while acknowledging that the court's modification included various contingencies that could allow him additional parenting time, defendant maintains that these would not significantly increase his time. He essentially became a weekend parent. Defendant argues, therefore, that the trial court committed clear legal error by applying the wrong burden of proof—specifically, a preponderance of the evidence instead of clear and convincing evidence—when modifying parenting time and changing the children's school district. Relatedly, defendant implies that the court's determination that plaintiff failed to show clear and convincing evidence to modify custody also foreclosed the possibility that its modification to parenting time was warranted by such proof.

We first address defendant's supporting authority. Notably, *Pierron* actually held that a proposed change in schools to a district 60 miles away (located near where the defendant mother relocated following the parties' divorce) and an associated modification to parenting time *would not* alter the children's established custodial environment. *Pierron*, 486 Mich at 84, 86-87. The Court reasoned that "the distance of the new schools from [the plaintiff father's]'s home would only require relatively minor adjustments to [his] parenting time." *Id.* at 87. It elaborated:

> Although the testimony here established that [the plaintiff father] is conscientiously involved with his children's education, there is no reason to believe from either the testimony or the trial court's findings of fact that the change of schools will significantly modify the established custodial environment the children share with [the plaintiff father]. A review of the record indicates that the children visit [the plaintiff father]'s home approximately three weekends out of every four, from Saturday afternoon until Sunday evening. Before the instant action was filed with the trial court, the children did not visit overnight on weeknights during the school year. The record also indicates that [the plaintiff father] occasionally picks the children up from tutoring and takes them out to dinner during the week. And, one week out of every seven, [the plaintiff father] takes the children out to lunch.
>
> Given this record, [the plaintiff father]'s weekend parenting time will be unaffected. With regard to weekdays, [the plaintiff father] is involved with the children during the daytime for only one week out of every seven because this is all that his work schedule allows. Although the 60-mile distance is acknowledgedly more inconvenient for [the plaintiff father], it is not so far that [he] cannot continue his occasional midweek activities with his children and his involvement in their education. Moreover, the record reflects that the children spend the vast majority of their time in the established custodial environment of [the defendant mother]. In fact, [the plaintiff father]'s own testimony acknowledged that the children "spend most of their time" with "their mother." From the children's perspective, the changes in the established custodial environment they share with [the plaintiff father] should be minor, if at all. This being the case, [the defendant mother]'s 60-mile move to Howell does not legally effect a change in the established custodial environment the children share with either [parent]. [*Id.* at 87-89 (footnotes omitted).]

In contrast, the *Lieberman* Court held that the trial court's changes to parenting time and the children's school enrollment did alter their established custodial environment, contrary to the lower court's determination. *Lieberman*, 319 Mich App at 71. The parties in *Lieberman*, following their divorce, shared joint legal custody of their minor children; however, the defendant mother had primary physical custody, with the plaintiff father having parenting time for one overnight each week, on alternate weekends and holidays, and for four weeks during summer vacation. *Id*. at 71-72. The plaintiff father later moved to modify parenting time and to change the children's schools, essentially requesting that the parties' parenting-time schedules be swapped. *Id*. at 74.

This Court ultimately concluded that the trial court committed clear legal error in granting the plaintiff father's requested changes. *Id*. at 84. It stated:

> Notwithstanding the label [the plaintiff father] gave his motion or his inaccurate assertion that the proposed "swap" in parenting time would produce "no material change in the amount of time the children spend in each household," [his] proposed modifications to parenting time effectively changed physical custody of the children from [the defendant mother] to [the plaintiff father].
>
> * * *
>
> As noted, an award of physical custody primarily or solely to one party typically entails a situation in which the children receive physical care and supervision primarily from the parent awarded that status. That is the case here. . . . [T]he children in the case at bar have resided with and been cared for and supervised primarily by [the defendant mother] since entry of the judgment of divorce. Thus, it defies the plain meaning of the word "primary," as well as rudimentary mathematics, to say that reducing the primary custodian's overnights with the children from 225, or nearly 62% of the calendar year, to 140, or approximately 38% of the calendar year, does not change primary physical custody. By proposing a reduction in the number of overnights the children spend with [the defendant mother] to a distinct minority of the year, [the plaintiff father] was proposing a change in custody, regardless of the label he gave his motion. Accordingly, the proper legal standard under which to review his motion was the more burdensome and restrictive standard set forth in *Vodvarka* [i.e., clear and convincing evidence], not the less restrictive legal framework set forth in *Shade* [i.e., a preponderance of the evidence] . . . . [*Id*. at 84-86.]

The Court continued:

> Even if we were to accept [the plaintiff father]'s characterization of his motion as one simply to modify parenting time and change schools, we nevertheless would hold that the trial court committed error requiring reversal by finding, against the great weight of the evidence, that [the plaintiff father]'s proposed change[s] would not affect the established custodial environment the children share with [the defendant mother] and by not analyzing the motion under the applicable legal framework set forth in *Vodvarka*. [*Id*. at 86-87.]

-5-

The Court also distinguished *Pierron*, stating that, while "substantial modification[s] of parenting time" do alter an established custodial environment, "minor modifications that leave a party's parenting time essentially intact do not . . . ." *Id.* at 89-90.

In *Brown v Loveman*, 260 Mich App 576, 592; 680 NW2d 432 (2004), this Court similarly concluded that the trial court erred in granting the defendant mother's proposed modification to parenting time without finding clear and convincing evidence in support, specifically because the alteration "necessarily changed the established custodial environment . . . ." There, the Court reasoned that the defendant mother's proposed modification, going from equal parenting time to her having parenting time during the school year and the plaintiff father having his during the summer vacation, altered the custodial environment by reducing the plaintiff father's parenting time to three months per year versus the defendant mother's nine months. *Id.* at 595-598.

Lastly, this Court in *Powery v Wells*, 278 Mich App 526, 527-529; 752 NW2d 47 (2008), affirmed the trial court's decision to require clear and convincing evidence to support the plaintiff mother's proposed move and associated modification to parenting time. Of particular relevance, the Court concluded that the proposed changes would alter the child's custodial environment because the parties would go from equal involvement in the child's life to one parent "be[ing] relegated to the role of a 'weekend' parent." *Id.* at 528; see also *Rains v Rains*, 301 Mich App 313, 324; 836 NW2d 709 (2013) ("If a change in domicile will substantially reduce the time a parent spends with a child, it would potentially cause a change in the established custodial environment."); *Gagnon v Glowacki*, 295 Mich App 557, 572-573; 815 NW2d 141 (2012) (finding "some merit" in the defendant father's argument that the child's established custodial environment would necessarily be affected were he to become a weekend-only father).

Following these authorities, we agree with defendant that the trial court erred by concluding that its modification to parenting time and school enrollment would not alter the children's custodial environment. Here, before considering the various included contingencies, the court's modification to parenting time reduced defendant's annual days with the children from approximately 182 to 82.[2] This changed defendant's parenting time from 50% of the calendar year to about 22%. This 28-percentage-point reduction is greater than the 24-percentage-point difference in *Lieberman*, 319 Mich App at 85-86. The change is also similar to that in *Brown*, 260 Mich App at 597, where the plaintiff father went from equal parenting time to only having time during the three months of summer vacation (or 25% of the calendar year). These facts similarly align with the *Powery* Court's reliance on alterations to parenting time relegating a custodial parent's role to that of a weekend parent, *Powery*, 278 Mich App at 528, which certainly occurred here, particularly regarding parenting time during the school year. This case is thus distinguishable from the relatively minor adjustments to parenting time at issue in *Pierron*, 486 Mich at 87-89.

Moreover, we disagree with plaintiff's contention that the trial court's contingencies allowing for additional parenting time on select Fridays and Mondays makes any difference in this analysis. Critically, there is no guarantee to what extent defendant could exercise these contingencies in practice, as any additional parenting time is dependent both on the children not

---

[2] For purposes of this analysis, we estimate summer vacation to last 12 weeks during the calendar year, with the children in school for the remaining 40 weeks.

having school and plaintiff having to work. Inferring the existence of any additional parenting time from these contingencies would require speculation.

Finally, the court's modification did not just significantly impact the time defendant has with the children, but also the character of his interactions with them. Specifically, defendant tutored the children regularly with schoolwork under the previous parenting-time schedule, but he is now presumably limited in doing so given the severe restrictions on his school-year parenting time. See *Lieberman*, 319 Mich App at 91-92 ("[C]entral to the children's established custodial environment with [the defendant mother] was the support and guidance [she] gave and the material needs she met relative to the children's school attendance. [The plaintiff father]'s proposed modification of parenting time would not only substantially reduce the time [the defendant mother] would spend with the children, it would also change the character of her interaction with the children. Therefore, the proposal significantly alters the children's established custodial environment with [the defendant mother].").

For these reasons, we conclude that "the trial court committed clear legal error in its choice and application of the legal framework under which to analyze [the parties'] motion[s]." *Lieberman*, 319 Mich App at 84. Given the applicable caselaw, the court was mistaken in asserting that its modification to parenting time "would not substantially change [defendant's] relationship with the children" and that "[t]he established custodial environment will not be disrupted by a change in school enrollment." While a simple change of schools may not have necessitated a change in the children's custodial environment, the school change in conjunction with the significantly reduced parenting time for defendant did.

Accordingly, we vacate the trial court's January 19, 2022 order and remand for further proceedings in compliance with the Child Custody Act and relevant caselaw regarding the established custodial environment and applicable burden of proof when evaluating the children's best interests. See *id*. at 94. Because the trial court's order is vacated, we do not opine on defendant's implication, unsupported by any authority, that the court's conclusion on plaintiff's proposed change in custody foreclosed its significant changes to parenting time. Furthermore, given our resolution of this initial issue, we need not address defendant's second argument on appeal, nor the issues raised in his reply brief.

Vacated and remanded for further proceedings. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Brock A. Swartzle