*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KATIE J. KELLY,

Plaintiff-Appellant,

v

TIMOTHY L. SHOLANDER,

Defendant-Appellee.

UNPUBLISHED
October 01, 2024
3:01 PM

No. 367943
Marquette Circuit Court
LC No. 2020-059318-DM

Before: RIORDAN, P.J., and RICK and N. P. HOOD, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order denying her request for a change of legal residence for herself and the parties' three minor children. We conclude that the trial court's failure to address the application of the 100-mile rule set forth in MCL 722.31(1) was a procedural misstep that requires further factual findings. If the trial court finds that plaintiff's proposed move is subject to the 100-mile rule, it must also reevaluate the change-of-residence factors set forth in MCL 722.31(4)(a) and (b). For these reasons, we vacate the trial court's order and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

The parties' judgment of divorce, entered in August 2021, awarded the parties joint legal and physical custody of their minor children. The judgment further provided that "[a] parent whose custody or parenting time of a child is governed by this order will not change the legal residence of the child except in compliance with . . . MCL 722.31, unless otherwise specified in this order or the Agreement."[1]

Following their divorce, the parties had a contentious relationship. Plaintiff testified that the parties had poor communication and that "the whole relationship in general is tumultuous."

---

[1] Plaintiff does not raise an argument regarding the application of any separate agreement concerning changes to the children's residence.

-1-

The trial court also noted that the record was "replete with references to the difficulties in these parties' relationship."

In May 2023, plaintiff moved for a change of residence, asking to move with the children from Marquette, Michigan to Atlantic Mine, Michigan, where her then-fiancé—and now husband—resided. In her brief in support of the motion, plaintiff stated that the new residence was "approximately 115 miles from Marquette, just barely exceeding the 100-mile rule." See MCL 722.31(1). Defendant opposed the motion.

The parties agreed that the trial court was obliged to decide the motion on the basis of the criteria set forth in MCL 722.31(4). After conducting an evidentiary hearing, which consisted of taking proofs from plaintiff, the trial court denied the motion, citing in part the parties' post-divorce history of contentious relations and concerns about moving the children to a different school district. This appeal followed.

## II. THE 100-MILE RULE

The 100-mile rule set forth in MCL 722.31(1) is the threshold inquiry in a multi-step approach for evaluating a motion for a change of residence. After the threshold inquiry, "[a] motion for a change of domicile essentially requires a four-step approach." *Rains v Rains*, 301 Mich App 313, 325; 836 NW2d 709 (2013).

> First, a trial court must determine whether the moving party has established by a preponderance of the evidence that the factors enumerated in MCL 722.31(4) . . . support a motion for a change of domicile. Second, if the factors support a change in domicile, then the trial court must then determine whether an established custodial environment exists. Third, if an established custodial environment exists, the trial court must then determine whether the change of domicile would modify or alter that established custodial environment. Finally, if, and only if, the trial court finds that a change of domicile would modify or alter the child's established custodial environment must the trial court determine whether the change in domicile would be in the child's best interests by considering whether the best-interest factors in MCL 722.23 have been established by clear and convincing evidence. [*Id.*]

MCL 722.31(1) provides:

> A child whose parental custody is governed by court order has, for the purposes of this section, a legal residence with each parent. Except as otherwise provided in this section, a parent of a child whose custody is governed by court order shall not change a legal residence of the child to a location that is more than 100 miles from the child's legal residence at the time of the commencement of the action in which the order is issued.

MCL 722.31(4), in turn, sets forth five criteria that a court deciding whether to permit such a move must consider. "Implicit in MCL 722.31(1) . . . is that a custodial parent may move a child's residence by less than 100 miles without first obtaining permission from the court or consent from

the other party." *Pierron v Pierron*, 282 Mich App 222, 245; 765 NW2d 345 (2009), aff'd 486 Mich 81 (2010) (emphasis omitted).

In this case, the parties and the trial court presumed that the 100-mile rule limitation of MCL 722.31(1) applied such that plaintiff's proposed move required defendant's or the trial court's consent. When asked at the evidentiary hearing "how many miles" separated Marquette from her proposed new residence, plaintiff replied, "from [defendant's] house to that address is 112 miles," and "from the city center of Marquette, from my house, it's about 102 miles to [her husband's] house." Yet, the 100-mile rule limitation imposed by MCL 722.31(1) refers to "radial" or straight-line miles, rather than "road" or driving miles. *Bowers v VanderMeulen-Bowers*, 278 Mich App 287, 294; 750 NW2d 597 (2008).

In her appellate brief, plaintiff states that her proposed new residence in Atlantic Mine is "a straight line distance of 65.91 miles and driving distance of 107.43 miles from the parties' home at the commencement of the divorce action." Plaintiff also cites *Bowers* for the proposition that "[t]he proper method for calculating the distance between the current legal residence and the proposed residence is to measure the distance by radial miles, i.e., on a straight line or 'as the crow flies,' rather than by road miles." But plaintiff fails to acknowledge that her straight-line distance calculation calls into question the trial court's application of MCL 722.31(1) and (4) in the first instance.

We are not obligated to accept plaintiff's estimate of the straight-line distance between the children's current legal residence and plaintiff's proposed legal residence. But we do take judicial notice that Marquette and Atlantic Mine are separated in part by Keweenaw Bay, such that the driving distance between them is greater than the straight-line distance between them. See MRE 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). See also *Kuhn v Gibraltar*, unpublished per curiam opinion of the Court of Appeals, issued January 4, 2024 (Docket No. 364027), p 1 n 2 ("[A] map is an appropriate subject of judicial notice.").[2]

We do not typically address matters over which the parties and the trial court expressed no disagreement. But the trial court's analysis of the factors provided in MCL 722.31(4) without first addressing the application of MCL 722.31(1)'s 100-mile rule was a procedural misstep that requires further factual development and findings. We, therefore, remand this case to the trial court to determine on the record whether plaintiff's proposed move implicates MCL 722.31(1)'s 100-mile rule. Cf. *Al-Maliki v LaGrant*, 286 Mich App 483, 485-486; 781 NW2d 853 (2009) (explaining that courts may consider issues sua sponte, provided that they afford the parties a meaningful opportunity to be heard).

---

[2] Unpublished opinions are not binding authority but may be persuasive or instructive. MCR 7.215(C)(1); *Haydaw v Farm Bureau Ins Co*, 332 Mich App 719, 726 n 5; 957 NW2d 858 (2020).

III.  MCL 722.31(4)

Although remand is warranted for the trial court to determine at the threshold whether plaintiff's proposed move implicates MCL 722.31(1)'s 100-mile rule, we will review the trial court's findings and conclusions regarding the factors set forth in MCL 722.31(4) in the event that the 100-mile rule is implicated and the trial court proceeds to address whether the proposed move alters the children's established custodial environment and serves their best interests.  On appeal, plaintiff argues that the trial court clearly erred in its interpretation and application of the factors under MCL 722.31(4)(a) ("whether the legal residence change has the capacity to improve the quality of life for both the child and the relocating parent") and (b) (the parents' compliance with, and utilization of parenting time and whether the change would frustrate that utilization).  We agree.  We address each factor in turn.

All custody orders must be affirmed on appeal unless the trial court's factual findings were against the great weight of the evidence, the court committed a palpable abuse of discretion, or the court made a clear legal error on a major issue.  See MCL 722.28; *Fletcher v Fletcher*, 447 Mich 871, 876-877; 526 NW2d 889 (1994).  "A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction." *Pennington v Pennington*, 329 Mich App 562, 570; 944 NW2d 131 (2019).  "A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law." *Id.* (quotation marks and citation omitted).  In child-custody cases, an abuse of discretion occurs "when the trial court's decision is palpably and grossly violative of fact and logic." *Dailey v Kloenhamer*, 291 Mich App 660, 664-665; 811 NW2d 501 (2011) (quotation marks and citation omitted).

If a proposed move implicates the 100-mile rule of MCL 722.31(1), a trial court deciding whether to allow the move must consider the factors set forth in MCL 722.31(4)[3]:

---

[3] We also note that whether the 100-mile rule is implicated is only part of the court's inquiry.  In *Pierron*, our Supreme Court provided a roadmap for analyzing how a proposed move would impact the established custodial environment:

> The Child Custody Act "applies to all circuit court child custody disputes and actions, whether original or incidental to other actions."  MCL 722.26(1).  The act provides that when parents share joint legal custody . . . "the parents shall share decision-making authority as to the important decisions affecting the welfare of the child."  MCL 722.26a(7)(b).  However, when the parents cannot agree on an important decision, such as a change of the child's school, the court is responsible for resolving the issue in the best interests of the child.  *Lombardo v Lombardo*, 202 Mich App 151, 159; 507 NW2d 788 (1993); see also MCL 722.25(1).  When resolving important decisions that affect the welfare of the child, the court must first consider whether the proposed change would modify the established custodial environment . . . . If the required parenting time adjustments will not change whom the child naturally looks to for guidance, discipline, the necessities of life, and parental comfort, then the established custodial environment will not have changed.  See *id.*  The court may not " 'change the established custodial environment of a

-4-

(a) Whether the legal residence change has the capacity to improve the quality of life for both the child and the relocating parent.

(b) The degree to which each parent has complied with, and utilized his or her time under, a court order governing parenting time with the child, and whether the parent's plan to change the child's legal residence is inspired by that parent's desire to defeat or frustrate the parenting time schedule.

(c) The degree to which the court is satisfied that, if the court permits the legal residence change, it is possible to order a modification of the parenting time schedule and other arrangements governing the child's schedule in a manner that can provide an adequate basis for preserving and fostering the parental relationship between the child and each parent; and whether each parent is likely to comply with the modification.

(d) The extent to which the parent opposing the legal residence change is motivated by a desire to secure a financial advantage with respect to a support obligation.

(e) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

The trial court initially put aside considering whether the proposed change of residence would change the children's established custodial environment and serve the children's best interests in order to determine at the outset if plaintiff could "meet an initial threshold" for satisfying her burden under MCL 722.31(4) based on a preponderance of the evidence.

Factors (d) and (e) are not at issue. The court held that factor (e) was inapplicable, and it indeed appears from the record that domestic violence has never been an issue for these parties or their children. The court similarly found that factor (d) was not "significantly relevant," explaining that "it's financially . . . more feasible for the Plaintiff, if the move were permitted, but it's not the motive for that in terms of child support obligations and so forth, I don't think either party is particularly motivated by this." Plaintiff argues that she "met her burden" for factor (d). But

---

child unless there is presented clear and convincing evidence that it is in the best interest of the child.' " *Id*. at 585; 680 NW2d 432, quoting MCL 722.27(1)(c). [*Pierron*, 486 Mich at 85-86 (footnotes omitted).]

In making a ruling that would result in a change to the child's established custodial environment, "the trial court must consider all the best-interest factors because a case in which the proposed change would modify the custodial environment is essentially a change-of-custody case." *Id*. at 92-93. See also *Sabatine v Sabatine*, ___ Mich ___; ___ NW3d ___ (2024) (Docket No. 165279); slip op at 7 (reiterating that *Pierron* set forth the standard that trial courts must follow when making a decision that could modify a child's established custodial environment). Thus, even setting aside whether the 100-mile rule is implicated, the court must still analyze whether a change in residence is in the child's best interests.

because that factor focuses on the party opposing the move, plaintiff had no such burden to meet. The trial court's conclusion that neither party was motivated by financial advantage meant only that factor (d) did not did not give the court reason to impugn defendant's motives for opposing the move.

Factor (c) is also not at issue. Regarding factor (c), the trial court stated:

On factor three, whether a modification could provide an adequate basis for preserving and fostering the [parental] relationship[s], I would find that it generally can. Again, the number of overnights would not be significantly modified if the Plaintiff's request were granted. It does take away the ability to have regular school week time, which is . . . a very typical way of allowing both parents to be involved in the school environments and to have regular contact with . . . children's friends and activities and so forth, however I think given . . . the relatively approximate number of parenting time overnights that could be provided under the Plaintiff's proposed schedule suggests to the Court that . . . it's possible to modify it in a way that that could preserve that relationship.

We read the reference in subdivision (c) to "whether each parent is likely to comply with the modification" as calling for consideration of a parent's practical difficulties in managing the logistical burdens resulting from the proposed change of residence rather than a parent's willful refusal to comply with the court's orders. The trial court apparently saw it this way, having concluded that subdivision (c) was satisfied while avoiding references to the parties' contentious history. Plaintiff reasonably concludes that she "met her burden for factor (c)."

Concerning factor (b), the trial court stated:

I do not find that this . . . move is because the Plaintiff wants to defeat the parenting time schedule. Again, the Court finds it is a genuine request for the Plaintiff to reside with her now husband, however the fact that it's not inspired by that motive, does not mean that the factor is really satisfied, when we look at the other aspects of it. The degree to which there's been compliance, both parents have again, genuinely wanted to spend time with the children and generally have we're looking at a two-year period, where at the time of the divorce, approximately two years ago, the parties were still sharing a home. There have been multiple changes in the parties' . . . lives since that time, which is not unusual in the context of a divorce and the need to kind of effectuate the changes that are required, when the family separates through divorce. However, the repeated conflict in trying to exercise this parenting time together, and complying with the orders, arguing about the orders, desiring to change them and not really having effective communication under the orders, suggests again to the Court, that imposing the additional distance I think . . . is not a realistic way to try to improve that relationship.

The trial court misapplied factor (b). MCL 722.31(4)(b) concerns the degree to which each parent has complied with, and taken advantage of, court-ordered parenting time, along with the extent to which "the parent's plan to change the child's legal residence is inspired by that parent's desire to defeat or frustrate the parenting time schedule." Regarding the first part of factor (b),

-6-

compliance with parenting time, the trial court's statement that "both parents have . . . genuinely wanted to spend time with the children and generally have," considered in light of the lack of any indication that either parent has substantially failed to take full advantage of parenting time, indicated that the court could reasonably expect both parents to keep up their record of compliance with parenting time, even if somewhat greater commuting distances are involved.

Regarding the second part of factor (b), whether plaintiff's desire to change residence was motivated by her desire to defeat or frustrate defendant's parenting time, the court's statement, "I do not find that this . . . move is because the Plaintiff wants to defeat the parenting time schedule," should have ended the inquiry. The court's concern that "the fact that it's not inspired by that motive, does not mean that the factor is really satisfied, when we look at the other aspects of it," and subsequent recounting of conflicts between the parties constituted a departure from the proper statutory analysis. MCL 722.31(4)(b) calls for two determinations—the extent to which the parties have properly exercised parenting time, and whether the moving parent is motivated by a desire to frustrate the other parent in that regard. It does not ask about the parents' discord with each other, their satisfaction with the pertinent custody arrangement, or how well they communicate with each other. Accordingly, we agree with plaintiff that the trial court should have recognized that, given its findings regarding the parties' compliance with parenting time, and plaintiff's lack of pernicious motive, factor (b) did not pose an impediment to plaintiff's plan to relocate.

The trial court also misapplied factor (a). Concerning factor (a), the trial court recounted that the parties' divorce proceedings two years earlier, including plaintiff's unsuccessful motion to move the children to Michigan's lower peninsula and prior dispute regarding a change to the children's schools. The court continued as follows:

> The point of reciting some of this history, is that the Court [is] very familiar with the circumstances of the children and the . . . ongoing and repeated difficulties in the parties' relationship that have resulted in many hearing[s] occurring before this Court and most particularly, the amount of change that the children have undergone in the last couple of years among them a school change about a year ago.

The court held that the proposed move might improve plaintiff's employment prospects, although not dramatically, given the testimony from her prospective employer indicating that prospects involving him were not "really dependent on location of residence." The court further stated that plaintiff's "joint residence with a spouse and the ability to have more freedom in the schedule and perhaps support at home, while other employment opportunities could be undertaken would have some benefit to the Plaintiff," and thus that "[t]hat aspect of the first factor I think is certainly satisfied." The court thus found that the proposed move had the capacity to improve plaintiff's quality of life. However, the court opined that the proposed move offered no such advantage to the children:

> The Court is not satisfied that the other aspect is really met by the Plaintiff's proofs at this stage, that the capacity to improve the quality of life of the children. Again, the financial benefit to Plaintiff does translate into some benefit for children . . . . Most dominant . . . is this legal residence change and the capacity to improve. This Court has presided over multiple hearings and again, two years ago a requested move, last year a change in school. It's difficult for the Court to conclude that a

further change at this stage, would have the capacity to improve their quality of life. The Court has heard the testimony about some difference between the school systems and . . . the state . . . measurement criteria do appear to be somewhat better in the Houghton school district than in Marquette. . . . [But] both school districts appear to offer an appropriate learning environment. Relevant . . . is the testimony from teachers involved with the parties' minor [daughter], who has some special needs and the teacher testified that she had some difficulties in the year, but later seemed to be doing much better, had developed a social circle, had some very positive aspects of the school year. . . . I think for a child with those specific issues, while the services . . . are available in the Houghton County school, a further change after having just changed schools last year, and the Court hearing the testimony about some moderate, but not substantial differences between the two school districts, is simply not satisfied that that would have the capacity to improve the quality of life. Also relevant . . . is the further distance that this places between the parents' two homes. The parents have had considerable difficulty in effectuating the parenting time schedule. There have been multiple complaints to Friend of the Court, disagreements about it, requests to modify it, desire to make changes to it. Both parents . . . genuinely want to spend more time with their children. But their ability to cooperate in an effective way under the existing schedule . . . would be exacerbated if we imposed the additional distance between the two homes, . . . and so that aspect of quality of life is certainly relevant . . . . It's not to diminish the positive aspects of the ability to . . . live with a husband and to have what would be a more traditional existence, but when we look at the child aspects of that factor, I think the case is far less persuasive.

We defer to the trial court's finding that, although both school districts "appear to offer an appropriate learning environment," the proposed change of schools did not have the capacity to improve (or diminish) the children's quality of life. The trial court however did not decide factor (a) in relation to the children entirely on that basis. It also expressed concerns about the greater commuting distance between the parties' residences, especially in light of the parties' poor relationship. We conclude that the court displayed an excessive concern for the anticipated additional strain on the parties' relationship when the issue before it was how the proposed move would impact the children's quality of life. Consistent with its factual findings for factors (b) and (c), the court should expect that the parties, despite their acrimonious relationship, will continue to comply with and take advantage of parenting-time orders, even if those orders come to involve greater commuting distances. Like our analysis of factor (c), the court should have accounted for the additional logistical burdens the proposed move could cause without presuming that the parties would allow any resulting exacerbation of their "tumultuous" relationship to impact the children's quality of life.

IV. CONCLUSION

For the reasons stated, we vacate the trial court's order denying plaintiff's motion for a change of residence and remand for further proceedings. If plaintiff's proposed move is found to be subject to the 100-mile rule of MCL 722.31(1), the trial court is to reevaluate the factors set forth in MCL 722.31(4)(a) and (b) consistent with this opinion.

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Michelle M. Rick
/s/ Noah P. Hood