*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HEATHER JOY FRANKLIN,

      Plaintiff-Appellee,

v

DAVID ANTHONY KOHLER,

      Defendant-Appellant.

UNPUBLISHED
June 20, 2025
11:53 AM

No. 373502
Grand Traverse Circuit Court
LC No. 2016-012835-DP

Before: BOONSTRA, P.J., and REDFORD and MARIANI, JJ.

PER CURIAM.

In this child-custody dispute, defendant appeals by right the trial court's order granting plaintiff's motion to modify physical custody of the parties' child, denying defendant's motion to change the child's domicile, and establishing a parenting-time schedule.[1] We affirm.

## I. BACKGROUND

The parties are the biological parents of SF, who was born in May 2016.[2] The parties briefly dated, but they ended their relationship shortly after plaintiff became pregnant with SF. After SF's birth, the parties obtained a custody and parenting-time order awarding joint legal custody to the parties but primary physical custody to plaintiff and parenting time as agreed upon by the parties. The trial court granted the parties a few different parenting-time schedules throughout the case, and the parties were able to effectively coparent the child in Traverse City,

---

[1] The order also referred the parties to the Friend of the Court for recalculation of child support. Neither party challenges child support on appeal.

[2] Plaintiff also has a son from a previous relationship, EF, who is approximately one year older than SF. Defendant has one son from a previous relationship as well as four younger sons (three of whom are biologically related to him) with his current wife, whom he married in October 2017. Defendant's eldest son is now approximately 14 years old and primarily resides with his mother in Northport, Michigan; the remaining four reside with defendant and his wife in Summerville, South Carolina, and range in age from approximately two to ten years old.

-1-

Michigan, for several years. Relevant to this appeal, the parties entered into a mediation agreement—which the trial court adopted in its custody and parenting-time order in August 2021—that maintained joint legal custody but granted defendant primary physical custody of SF after plaintiff was convicted of operating under the influence of liquor, open container, and endangering a child (plaintiff's minor son, EF). As part of the mediation, the parties also agreed to a four-phase parenting-time schedule that gradually increased plaintiff's supervised—and eventually unsupervised—parenting time so that plaintiff could address her substance-abuse issues and obtain sobriety. Plaintiff agreed to these arrangements with the expectation that she would be able to work back toward the equal physical custody under which the parties had previously operated.

In September 2023, after successfully completing all four phases of parenting time pursuant to the mediation agreement, plaintiff filed a motion to modify custody, seeking equal physical custody and parenting time of SF, which defendant opposed. Plaintiff argued that she had addressed her substance-abuse issues through regular counseling with a psychologist and weekly participation in Narcotics Anonymous and that she had remained sober without relapse since her incarceration in 2020. Plaintiff contended that the circumstances that led to the prior custody order—i.e., her substance-abuse issues—no longer existed and that this change of circumstances warranted revisiting that order.

A few months later, in January 2024, defendant accepted a job in South Carolina and, approximately one week before plaintiff's motion to modify custody was set to be heard, filed a motion to change SF's domicile to South Carolina. Defendant argued that his new job would significantly improve his family's financial situation because it provided a substantial salary increase, better benefits, and more opportunities for him to grow in the company. Defendant further argued that SF only had an established custodial environment with him and that the move would not alter the custodial environment that she had with plaintiff because she would remain in defendant's primary care.

A family-court referee thereafter conducted an evidentiary hearing to address the parties' motions, at which both parties testified, presented additional witnesses, and presented documentary evidence.[3] Shortly after the hearing, the referee issued a written opinion detailing his findings of fact and his conclusions regarding custody, parenting time, and defendant's motion to change domicile. The referee found that the child had an established custodial environment with both parties and that plaintiff's proposed custody change would not alter that environment. As a result, he reviewed the best-interests factors set forth in MCL 722.23 under the preponderance-of-the-evidence standard and, having done so, concluded that plaintiff had sufficiently established that returning to an equal split of physical custody was in SF's best interests. The referee then considered the change-of-domicile factors set forth in MCL 722.31(4) and found that defendant had failed to establish by a preponderance of the evidence that these factors supported his request to change domicile. The referee ultimately recommended that plaintiff's motion to modify custody be granted and that defendant's motion to change domicile

---

[3] Spread across four separate days, the hearing began in late-January 2024 and ended in mid-February 2024.

be denied, but he declined to set a parenting-time schedule and instead ordered the parties to mediate the schedule "because neither party provided adequate evidence for [him] to devise any meaningful schedule."

Defendant objected to the recommendations,[4] arguing that plaintiff's motion to modify custody should have been reviewed under the clear-and-convincing-evidence standard because the proposed change drastically altered SF's established custodial environment with him. Defendant also challenged the referee's findings under several of the best-interests and change-of-domicile factors. The trial court conducted a de novo review hearing in October 2024, at which defendant provided additional testimony regarding his new job and the area to which he and his family had relocated approximately four months prior.

About one month later, the trial court issued a detailed written opinion and order affirming the referee's recommendations to grant plaintiff's motion to modify custody and to deny defendant's motion to change domicile. In doing so, the trial court adopted nearly all the referee's findings of fact and conclusions of law, with the one exception being the findings regarding best-interests factor (e), MCL 722.23(e). The court's order also established a new parenting-time schedule that provided defendant "ten weeks of parenting time in summer," "parenting time during the winter school break" and "the spring school vacation in even-numbered years," and "Thanksgiving weekend in odd numbered [sic] years." This appeal followed.

## II. STANDARDS OF REVIEW

"In matters involving child custody, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." *Kuebler v Kuebler*, 346 Mich App 633, 652-653; 13 NW3d 339 (2023) (quotation marks and citation omitted); see also MCL 722.28. "We apply three standards of review in custody cases." *Stoudemire v Thomas*, 344 Mich App 34, 42; 999 NW2d 43 (2022) (quotation marks and citation omitted). The trial court's factual findings are reviewed under the great-weight-of-the-evidence standard. *Id*. "A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction." *Id*. (quotation marks and citation omitted). "Questions of law are reviewed for clear legal error. A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law." *Id*. (quotation marks and citation omitted). Discretionary rulings, including decisions regarding custody and a motion to change domicile, are reviewed for an abuse of discretion. *Id*.; *Safdar v Aziz*, 342 Mich App 165, 175; 992 NW2d 913 (2022). "In child custody cases specifically, an abuse of discretion retains the historic standard under which the trial court's decision must be palpably and grossly violative of fact and logic." *Kuebler*, 346 Mich App at 653 (quotation marks and citation omitted). Reviewing courts should defer to the trial court's superior ability to weigh evidence, assess credibility, and otherwise evaluate a child's best interests. *Sabatine v Sabatine*, 513 Mich 276, 285; 15 NW3d 204 (2024).

---

[4] Both parties objected to the recommendations, but only defendant's objection is relevant to this appeal.

### III. APPROPRIATE EVIDENTIARY STANDARD

Defendant first argues that the trial court committed clear legal error by failing to apply the clear-and-convincing-evidence standard when making its custody determination.[5] We disagree.

In making a custody determination, whether a proposed custody arrangement would alter an established custodial environment dictates whether a trial court applies a clear-and-convincing-evidence standard or a preponderance-of-the-evidence standard to its analysis of the best-interests factors. *Kuebler*, 346 Mich App at 670. "If the proposed change would modify the established custodial environment of the child, then the burden is on the parent proposing the change to establish, by clear and convincing evidence, that the change is in the child's best interests." *Sabatine*, 513 Mich at 286 (quotation marks and citation omitted). "On the other hand, if the proposed change would *not* modify the established custodial environment of the child, the burden is on the parent proposing the change to establish, by a preponderance of the evidence, that the change is in the child's best interests." *Id*. (quotation marks and citation omitted).

The trial court in this case found[6] that an established custodial environment existed with both parties. The court acknowledged that plaintiff's struggles with substance abuse required defendant to act as SF's primary caregiver while plaintiff worked toward sobriety, but plaintiff had turned her life around and "remained sober for nearly three years," and she had been providing SF "with guidance, discipline, her essential needs, and parental comfort during her parenting time." The court also commended defendant for "hav[ing] always provided a great environment" for SF and found that defendant had "continue[d] to provide [SF] with guidance, discipline, essential needs, and parental comfort." The court further found that granting "[p]laintiff's request for equal parenting time would not affect [SF's] established custodial environment with either party" because the parties would "be able to maintain the same relationship with" SF. Based on this, the court concluded that the preponderance-of-the-evidence standard governed its analysis of the best-interests factors in its custody determination. See *id*.

Defendant argues that changing his primary physical custody of SF to an equal split between the parties would necessarily alter SF's established custodial environments because it would dramatically alter the number of overnights she spent with each party. Thus, defendant contends, the trial court was required, as part of its custody determination, to consider the best-interests factors set forth in MCL 722.23 under the clear-and-convincing-evidence standard. For support, defendant principally relies on *Lieberman v Orr*, 319 Mich App 68, 85-90; 900 NW2d 130 (2017), arguing that "the prodigious change in overnights from 61 to 182.5 per year . . . flies in the face of the well-established case law holding that such a substantial change in parenting time *ipso facto* changes the established custodial environment." Our Supreme Court, however, has

---

[5] Defendant does not challenge the trial court's findings that there was proper cause or a change of circumstances warranting modification of the prior custody order or that an established custodial environment existed with both parents, both of which were necessary prerequisites to the trial court's analysis of the best-interests factors in this case. See *Kuebler*, 346 Mich App at 668-669.

[6] As previously noted, a referee rendered the initial findings, but the trial court adopted those findings following a de novo review hearing.

criticized such an approach to *Lieberman* and has expressly held that courts are not to treat "the established-custodial-environment question as if it were a simple math equation that could be answered by looking at the number of overnights the child[] spend[s] with each parent." *Sabatine*, 513 Mich at 292-293. The Court noted "that the physical environment and number of overnights a child spends with a parent" are relevant to an established-custodial-environment determination but are "not alone dispositive," and it "caution[ed] courts not to place too much or too little emphasis on the child's physical environment and instead recognize that child-custody cases are often factually complex" and that the trial courts are "typically in the best position to analyze the factual complexities of child-custody cases." *Id.* at 293.

As *Sabatine* makes clear, the touchstone of an established custodial environment is the *relationship* between the parent and child, which depends on more than simply when or how often a parent exercises his or her parenting time. See *id.* Moreover, it is SF's standpoint as the *child* rather than plaintiff's standpoint as a *parent* that controls the trial court's analysis in this matter. See *id.* at 286. The trial court's custody award comports with these principles; although the award would work a substantial change in the preexisting parenting-time arrangement, the court concluded it would still maintain SF's existing relationships with each party and not alter the child's established custodial environments. Defendant may disagree with that assessment, but he has not shown a reversible error in it. See *Stoudemire*, 344 Mich App at 42. Accordingly, we do not see merit in defendant's claim that the trial court committed clear legal error by not applying the clear-and-convincing-evidence standard as part of its custody determination.

## IV. CUSTODY AWARD

Defendant argues that several of the trial court's best-interests findings were against the great weight of the evidence and did not support its decision to award the parties equal custody of SF. We disagree.

"To determine a child's best interests, the trial court is required to consider the 12 best-interest factors found in MCL 722.23," applying the appropriate standard of proof. *Kuebler*, 346 Mich App at 671. Defendant does not challenge the trial court's findings regarding best-interests factors (a) (love, affection, and other emotional ties), (b) (capacity and disposition to give child love, affection, and guidance), (c) (capacity and disposition to provide food, clothing, medical or remedial care, and other material needs), (d) (length of time in a stable, satisfactory environment), (f) (moral fitness), (i) (child's reasonable preference), or (*l*) (any other factor relevant to the particular dispute), all of which the trial court found either favored the parties equally or slightly favored defendant. See MCL 722.23(a)-(d), (f), (i), (*l*). Defendant argues that the trial court's findings under factors (e) (permanence of existing or proposed custodial home or homes), (g) (mental and physical health), (h) (home, school, and community record of child), (j) (willingness and ability to facilitate and encourage relationship between child and other parent), and (k) (domestic violence) were all against the great weight of the evidence. See MCL 722.23(e), (g)-(h), (j)-(k). We will address each challenged factor in turn.

Factor (e) considers the "permanence, as a family unit, of the existing or proposed custodial home or homes." MCL 722.23(e). The trial court found that this factor favored the parties equally because "[p]laintiff and [EF], over whom she had sole legal and physical custody, intend[ed] to live in their current apartment indefinitely," and defendant "ha[d] no plans to move from [his] new

home" in South Carolina. Defendant argues that this factor should have only favored him because plaintiff had a "nomadic lifestyle" and had lived with different partners in different places, whereas he had had "consistent, reliable, grounded home ownership with his wife and four children." The evidence established that defendant lived in a stable custodial environment with his wife and four sons. Both defendant and his wife testified that they had been married and lived together for several years, they were raising four of defendant's other children in their home, and SF had a good relationship with everybody in the household. The evidence also established, however, that plaintiff was similarly situated. Plaintiff testified that she had been living in a two-bedroom, one-bathroom duplex for a significant period, and she planned to remain there until she was eventually able to purchase her "forever home" for herself and her children. Plaintiff was single and did not live with anybody else except for EF, with whom SF was very close, nor was she looking for anybody else to live or romantically involve herself with. Plaintiff testified that she was solely focused on her future and that of her children. There was no evidence of a current or even recent "nomadic lifestyle" as defendant claims. Accordingly, the trial court's finding under this factor was not against the great weight of the evidence. See *Stoudemire*, 344 Mich App at 42.

Factor (g) considers the "mental and physical health of the parties involved." MCL 722.23(g). The trial court found that this factor favored the parties equally because there was no evidence suggesting that either party had any physical- or mental-health issues that would impede their ability to parent. In making this finding, the court rejected defendant's argument that this factor should have only favored him because of plaintiff's "long history of substance abuse and mental health concerns," noting that the evidence indicated that "[p]laintiff attend[ed] therapy to address any concerns from her past" and that "[t]here was no evidence produced that [she] had any current mental health issues that were affecting her ability to parent."

We do not find that "the evidence clearly preponderates in the opposite direction" of the court's conclusion. *Stoudemire*, 344 Mich App at 42 (quotation marks and citation omitted). Defendant presents the same argument on appeal as he presented in the court below, relying solely on plaintiff's 2020 psychological evaluation and arguing that, although the report is old, plaintiff presented no evidence to rebut it. Defendant, however, fails to duly appreciate that the psychologist who authored the 2020 evaluation testified that his evaluation was meant to assist the court in its 2021 custody determination and that it would be inappropriate for the court to rely on that same evaluation in a 2024 custody determination. The psychologist who worked more regularly with plaintiff testified similarly. Indeed, both psychologists explained that the prior evaluation was a mere snapshot in time, did not address plaintiff as she was during the four years after its completion, and was not necessarily representative of plaintiff at the time of the custody hearings. And plaintiff's psychologist further testified that the evaluation would likely come out differently if performed again at that time.

Moreover, the 2020 evaluation did not produce any diagnosis of a major mental illness. And although testimony established that plaintiff had struggled with substance-abuse issues in the past, she presented ample evidence of her sobriety from numerous witnesses. Plaintiff and her psychologist testified that plaintiff regularly attended counseling to deal with her substance-abuse issues and that she had continued her counseling well past what had been required of her by the court. Numerous individuals testified that plaintiff had not abused any substances since the start of her sobriety in August 2020, and they had no suspicions of her using substances since then. They also testified that plaintiff had an extensive network of support and was heavily involved in

the community and in Narcotics Anonymous. Plaintiff's employer testified that he had observed a tremendous positive change in plaintiff since the start of her sobriety in August 2020, that she had received three promotions since then due to her exemplary work, and that he had no concerns about her ability to maintain her sobriety going forward. Plaintiff had also undergone several random drug tests since 2021 pursuant to the mediation agreement, all of which were negative for substances.

In sum, the evidence showed that plaintiff had effectively turned her life around, and defendant presented no evidence showing that plaintiff's present sobriety or mental health was questionable. To the extent that defendant argues that plaintiff's psychologist was a biased advocate for plaintiff, the trial court was best equipped to assess such matters of credibility, and we see no basis to disrupt that assessment here. See *Sabatine*, 513 Mich at 285. Accordingly, the trial court's finding that this factor favored both parties equally was not against the great weight of the evidence. See *Stoudemire*, 344 Mich App at 42.

Factor (h) considers "[t]he home, school, and community record of the child." MCL 722.23(h). The trial court acknowledged that SF had changed schools between the evidentiary and de novo review hearings while in plaintiff's care so that she could "attend the same school" as EF, but it found that this factor still favored plaintiff because SF "ha[d] an established, strong and supportive community in the Traverse City area" that included "family on both sides." The court also acknowledged that, as a result of the requested change in custody, SF "may have less time with her four half-brothers in South Carolina," but SF would have more time with plaintiff's son, EF, and defendant's eldest son—both of whom still resided in the Traverse City area and with whom SF had a very close bond—and with her already-established "social support and friends through extracurricular activities like gymnastics."

On appeal, defendant emphasizes that SF "was taken out of Traverse Heights . . . as soon as the ink was dry on the . . . [referee's] opinion" after the evidentiary hearing. Defendant's argument, however, ignores his own testimony at the de novo review hearing that plaintiff consulted with both him and the child's counselor—whom defendant had selected for SF and whom he had trusted—about changing SF's school and that both plaintiff and the counselor strongly supported the change in schools. Although defendant testified that he did not feel like he had a choice in the change, he also testified that he nonetheless agreed to the change and that he could have moved the court to keep SF at Traverse Heights but ultimately chose not to do so.

Additionally, the evidence amply showed that the child had strong familial, social, and community connections to the Traverse City area. Both parties testified that SF generally did well in school, enjoyed learning, and regularly shared her school progress with them, even after defendant's move to South Carolina, and that both parties helped SF with her schoolwork. Testimony established that both parties' entire families lived in the Traverse City area, and many of those family members regularly visited SF. Plaintiff testified that she took SF to gymnastics every Saturday morning, which SF "absolutely love[d]," and SF regularly attended playdates with her close friend that also participated in gymnastics as well as with the children of plaintiff's close friend, all of whom were close to SF in age and shared a "very close bond" with her. This was all in contrast to South Carolina, where SF had no connections apart from defendant, defendant's wife, and her four half-brothers, and no community involvement. Defendant again attempts to downplay plaintiff's efforts in making herself a fit parent capable of providing a safe home for SF,

but as already discussed, there was ample evidence of plaintiff's turnaround and we see no basis to question any of the trial court's credibility assessments in that regard. See *Sabatine*, 513 Mich at 285. The trial court's finding regarding this factor was not against the great weight of the evidence. See *Stoudemire*, 344 Mich App at 42.

Factor (j) considers "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents." MCL 722.23(j). The trial court found that this factor favored the parties equally, acknowledging that the parties "have difficulty agreeing on many issues and have problems with communication," but they "do not disparage each other in front of" SF and they "attempt to foster and encourage a positive relationship with the other party[.]"

Consistent with the trial court's finding, both parties testified that although they sometimes struggled to work with each other, they nonetheless tried their best for SF's benefit, and they had engaged in both coparenting counseling and coparenting mediation to work with one another on issues pertaining to SF's care. Testimony established that the parties had agreed to have defendant temporarily act as SF's primary caregiver and to have plaintiff participate in a graduated parenting-time schedule as she addressed her substance-abuse issues. Defendant also helped facilitate sibling visits between SF and EF while plaintiff was incarcerated. Plaintiff's psychologist testified that she saw a willingness on plaintiff's part to engage with defendant in coparenting, and plaintiff testified that she continued to foster SF's relationship with defendant after he moved to South Carolina by regularly sending him videos and photographs of SF participating in extracurricular activities and by assisting SF with video calls with defendant at least twice a week. Defendant testified that he received only three weeks of parenting time during the summer after he moved to South Carolina, as opposed to the eight to ten weeks that plaintiff had proposed to the referee at the evidentiary hearing. As defendant also acknowledged, however, this amount of time was the product of the parties' mediation at the end of July that summer, after the referee declined to adopt plaintiff's proposal (or otherwise order a parenting-time schedule) and the parties were unable to work out a specific schedule themselves or to commence mediation on the matter sooner. These circumstances do not betray any error in the trial court's evaluation of this factor. Nor, more generally, have we found any basis to question the trial court's credibility assessments as to this factor. See *Sabatine*, 513 Mich at 285. The record amply supports the conclusion that the parties are equally willing and able to facilitate a close and continuing parent-child relationship between SF and the other party, and the trial court's finding to that effect was not against the great weight of the evidence. See *Stoudemire*, 344 Mich App at 42.

Factor (k) considers "[d]omestic violence, regardless of whether the violence was directed against or witnessed by the child." MCL 722.23(k). The trial court found that this factor favored both parties equally. Defendant argues on appeal, as he did in the court below, that this factor should have only favored him because plaintiff had been investigated by Children's Protective Services (CPS) twice in the past. As the trial court noted, however, defendant had *also* been investigated by CPS in the past. Testimony established that both parties had been investigated by CPS in 2023—defendant for allegations of inappropriate physical discipline of his children, and plaintiff for an allegation that her then-boyfriend had struck EF. Both parties denied the allegations, and after thorough investigations, both 2023 cases were closed as unsubstantiated. Plaintiff also testified that, to alleviate defendant's concerns regarding her then-boyfriend, she

agreed to not allow the boyfriend to be around SF alone, and then stopped living with him shortly after the investigation and ultimately broke up with him a few months later.

In addition, although testimony established that plaintiff had one substantiated claim in her past, it occurred six years before the hearings and was the result of physical abuse of both plaintiff and her son at the hands of plaintiff's boyfriend at that time. Plaintiff had separated from that boyfriend immediately after the incident, and he was subsequently convicted of domestic violence for his actions. Plaintiff testified that she was not living with, dating, or looking to date anyone at the time of the hearings, and both the CPS employee who investigated the 2023 allegation and an officer who made a follow-up welfare check testified that they had no concerns regarding SF's safety or the safety of plaintiff's home at the time of the hearings. Accordingly, the trial court's finding that this factor favored both parties equally was not against the great weight of the evidence. See *Stoudemire*, 344 Mich App at 42.

In sum, the trial court's findings under best-interests factors (e), (g), (h), (j), and (k) were not against the great weight of the evidence, and we are unpersuaded that its decision to grant plaintiff's motion to modify custody was "palpably and grossly violative of fact and logic." *Kuebler*, 346 Mich App at 653 (quotation marks and citation omitted).

## V. CHANGE OF DOMICILE

Lastly, defendant argues that some, but not all, of the trial court's findings under the change-of-domicile factors were against the great weight of the evidence and did not support its decision to deny defendant's motion to change domicile. We disagree.

MCL 722.31 governs requests to change a child's legal residence. MCL 722.31(1) provides the default rule, which is that "a parent of a child whose custody is governed by court order shall not change a legal residence of the child to a location that is more than 100 miles from the child's legal residence at the time of the commencement of the action in which the order is issued." Before permitting a change in domicile that would depart from this rule, a trial court must first "determine whether the moving party has established by a preponderance of the evidence that the factors enumerated in MCL 722.31(4) support [the] motion." *Safdar*, 342 Mich App at 179 (quotation marks, citation, and ellipsis omitted). MCL 722.31(4), in turn, sets forth five factors that a trial court must consider:

> (4) Before permitting a legal residence change otherwise restricted by [MCL 722.31(1)], the court shall consider each of the following factors, with the child as the primary focus in the court's deliberations:

> (a) Whether the legal residence change has the capacity to improve the quality of life for both the child and the relocating parent.

> (b) The degree to which each parent has complied with, and utilized his or her time under, a court order governing parenting time with the child, and whether the parent's plan to change the child's legal residence is inspired by that parent's desire to defeat or frustrate the parenting time schedule.

(c) The degree to which the court is satisfied that, if the court permits the legal residence change, it is possible to order a modification of the parenting time schedule and other arrangements governing the child's schedule in a manner that can provide an adequate basis for preserving and fostering the parental relationship between the child and each parent; and whether each parent is likely to comply with the modification.

(d) The extent to which the parent opposing the legal residence change is motivated by a desire to secure a financial advantage with respect to a support obligation.

(e) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

Of these factors, defendant only challenges the trial court's findings regarding (a), (c), and (e), arguing that the court's findings regarding each were against the great weight of the evidence.[7] We will address each challenged factor in turn.

Regarding factor (a), the trial court found that defendant had not demonstrated by a preponderance of the evidence that the proposed move would improve SF's quality of life. The court acknowledged that the move would financially benefit defendant and his family, but it emphasized that it "must evaluate this factor with a focus on [SF's] quality of life," and SF's "qualify of life may not be improved because she would be leaving her current community, [plaintiff,] and other half siblings." The court further found that SF had no connections to South Carolina outside of defendant and his family and that it "seem[ed] more harmful to remove [SF] from" an area where she had "a strong connection to [both sides of] her family and social connections."

These findings were amply supported by the evidence. Defendant provided extensive testimony about the financial benefits of his new position and his additional opportunities for growth in the company, including that his salary increased by several thousand dollars, that he received better health insurance and a better benefits package, and that the company paid for his tuition as he worked toward obtaining his bachelor's degree through online classes. Although, in some circumstances, "a substantial increase in income" can satisfy this factor, *Brown v Loveman*, 260 Mich App 576, 601; 680 NW2d 432 (2004), the trial court here found that "[d]efendant's current pay increase [wa]s marginal" and that, even if his pay continued to increase over time because of the additional opportunities for growth, that financial security did not outweigh the harm SF would suffer if removed from her family and community in Traverse City. As already discussed, SF had no ties to South Carolina except for defendant and his family, and there was ample testimony from several witnesses that SF had a very strong connection to her family and community in the Traverse City area. In light of the evidence presented, the trial court's finding

---

[7] Much of defendant's argument is premised on the notion that the trial court abused its discretion by awarding the parties equal physical custody of SF, but as already explained above, we disagree.

under this factor was not against the great weight of the evidence. See *Stoudemire*, 344 Mich App at 42.

Regarding Factor (c), the trial court was not satisfied that, if the court permitted the requested change in SF's domicile to South Carolina, it could modify the parenting-time schedule to adequately preserve and foster each party's parental relationship with SF, given the proofs already discussed that equal parenting time with plaintiff was in SF's best interests. The court acknowledged that "the mathematical number of overnights c[ould] be equalized even in a long-distance parenting time schedule," but it found that, even if it "order[ed] an equal number of overnights, the overall nature" of SF's relationship with each party would be "significantly altered," and "the long distance preclude[d] both parents from being physically present for [SF's] activities such as extracurriculars, school conferences, [and] medical appointments." Defendant asserts that "[t]he error here is evident," but that assertion is based simply on his disagreement with the trial court's determination that SF's best interests would be served by plaintiff having equal parenting time, rather than the lesser amount of parenting time she had been receiving previously. As discussed, we see no error in that determination. Nor do we otherwise see error in the court's assessment of this factor. As this Court has explained, when evaluating this factor, "[t]he new visitation plan [that would be provided under the requested change in domicile] only need provide a realistic opportunity to preserve and foster the parental relationship previously enjoyed by the nonrelocating parent." *McKimmy v Melling*, 291 Mich App 577, 583; 805 NW2d 615 (2011) (quotation marks and citation omitted). The record reflects that the trial court duly applied this principle to the facts before it, and we see no basis to conclude that the trial court's finding under this factor was against the great weight of the evidence. See *Stoudemire*, 344 Mich App at 42.

Regarding factor (e), which pertains to domestic violence, the trial court summarily adopted the referee's findings, which in turn adopted the findings made in the custody context regarding the parallel best-interests factor (k), MCL 722.23(k). Defendant likewise presents nothing beyond the same arguments he raised regarding best-interests factor (k). As already discussed, the trial court's findings as to that factor were not against the great weight of the evidence and, for the same reasons, we conclude that the evidence does not clearly preponderate in the opposite direction of the trial court's findings as to change-of-domicile factor (e). See *Stoudemire*, 344 Mich App at 42.

In sum, the trial court's findings under change-of-domicile factors (a), (c), and (e) were not against the great weight of the evidence, and we find no merit in defendant's claims of error to that effect.[8]

---

[8] Although unnecessary to do so given its findings already discussed above, the trial court nonetheless found that, even if defendant "could justify the proposed move by a preponderance of the evidence," the move would alter SF's established custodial environments and, given the best-interests findings already discussed in its custody determination, defendant would be unable to show by clear and convincing evidence that the move was in SF's best interests. See *Safdar*, 342 Mich App at 179 (stating that, after determining the factors in MCL 722.31(4) support the move

-11-

Affirmed.

/s/ Mark T. Boonstra
/s/ James Robert Redford
/s/ Philip P. Mariani

---

by a preponderance of the evidence, a court must determine by clear and convincing evidence that the move is in the child's best-interests based on the best-interests factors set forth in MCL 722.23 when the move would alter the child's established custodial environment). After a thorough review of the record, and for many of the same reasons already discussed above, we conclude that these additional findings were also not against the great weight of the evidence. See *Stoudemire*, 344 Mich App at 42.