*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KILEY ANDERS,

Plaintiff-Appellee,

v

RYON SARGENT,

Defendant-Appellant.

UNPUBLISHED
April 23, 2026
2:23 PM

No. 377332
Genesee Circuit Court
LC No. 19-922657-DS

Before: TREBILCOCK, P.J., and BOONSTRA and LETICA, JJ.

PER CURIAM.

Defendant-father appeals the trial court's order denying his motion to change the domicile of the parties' minor child from Michigan to Georgia. Because defendant failed to establish that a change of domicile was warranted, we affirm.

## I. BACKGROUND

The parties share one child—IS, born in 2018—but were never married. In late 2019, the trial court granted the parties joint legal and physical custody and, upon the parties' agreement, equal parenting time. Under a November 2024 parenting time order, IS typically lived with plaintiff in Flint from Thursday afternoon to Sunday afternoon, and with defendant in Grand Blanc the remainder of the week.

In early 2025, defendant filed a motion requesting the trial court change IS's domicile to Richmond Hill, Georgia. He cited three primary reasons for the change: (1) his wife's receipt of a more lucrative job offer, (2) a safer community environment, and (3) better schooling and more convenient extracurricular opportunities for IS. The trial court held a hearing and, after considering testimony from defendant, defendant's wife, and plaintiff, denied defendant's motion on the basis that he had failed to satisfy his burden of establishing that a change in domicile was warranted. Defendant appeals by right.

-1-

## II. CHANGE OF DOMICILE

On appeal, defendant claims the trial court abused its discretion, clearly erred, and made findings against the great weight of the evidence when concluding that defendant failed to demonstrate that a change of domicile was warranted under MCL 722.31(4). We disagree.

### A. STANDARD OF REVIEW

In child custody disputes, this Court must affirm all trial court orders and judgments "unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." *Moote v Moote*, 329 Mich App 474, 478; 942 NW2d 660 (2019) (quotation marks and citation omitted). "A trial court's ultimate decision on a motion for change of domicile," specifically, "is reviewed for an abuse of discretion." *Safdar v Aziz*, 342 Mich App 165, 175; 992 NW2d 913 (2022). "In this context, [a]n abuse of discretion is found only in extreme cases in which the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will or the exercise of passion or bias." *Id.* (quotation marks and citation omitted; alteration in original). Finally, this Court defers to the trial court's credibility determinations and "may not substitute its judgment on questions of fact unless the facts clearly preponderate in the opposite direction." *Moote*, 329 Mich App at 478 (quotation marks and citations omitted).

### B. ANALYSIS

A parent whose custody of a child is governed by court order cannot change that child's legal residence to a location more than 100 miles away without the other parent's consent or the court's permission (absent statutorily enumerated circumstances irrelevant to this appeal). MCL 722.31(1) and (2). When deciding a motion seeking court permission for such a change, the trial court must first "determine whether the moving party has established by a preponderance of the evidence that the factors enumerated in MCL 722.31(4)" support the motion. *Rains v Rains*, 301 Mich App 313, 325; 836 NW2d 709 (2013) (citation omitted). Centering on the child, these factors are:

> (a) Whether the legal residence change has the capacity to improve the quality of life for both the child and the relocating parent.

> (b) The degree to which each parent has complied with, and utilized his or her time under, a court order governing parenting time with the child, and whether the parent's plan to change the child's legal residence is inspired by that parent's desire to defeat or frustrate the parenting time schedule.

> (c) The degree to which the court is satisfied that, if the court permits the legal residence change, it is possible to order a modification of the parenting time schedule and other arrangements governing the child's schedule in a manner that can provide an adequate basis for preserving and fostering the parental relationship between the child and each parent; and whether each parent is likely to comply with the modification.

(d) The extent to which the parent opposing the legal residence change is motivated by a desire to secure a financial advantage with respect to a support obligation.

(e) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.  [MCL 722.31(4).]

At issue is the trial court's analysis concerning all factors save (d), which defendant does not challenge on appeal.  We address each remaining factor in turn.

### 1.  FACTOR (a) (MCL 722.31(4)(a))

The trial court concluded that defendant failed to demonstrate the move would improve the quality of his and IS's lives on any of the purported grounds—i.e., his wife's increased earning capacity, safety, and better educational and extracurricular opportunities.  It further found that the move would "uproot[]" IS's life by, in relevant part, moving her away from plaintiff, certain family, and IS's friends.  None of these findings were against the great weight of the evidence.

*New Job*.  A parent's increased earning capacity can improve the life of the parent and the child as required by MCL 722.31(4)(a).  See *Brown v Loveman*, 260 Mich App 576, 602; 680 NW2d 432 (2004).  Under certain circumstances, the job of a parent's spouse may also satisfy MCL 722.31(4)(a) if that job provides benefits for the child and allows the parent to act as a stay-at-home father or mother.  *Mogle v Scriver*, 241 Mich App 192, 195-196, 203-204; 614 NW2d 696 (2000).  Defendant, however, failed to establish that his wife's job offer would increase the quality of his and IS's lives on these or any other bases.

Regarding increased earning capacity, defendant's *wife* received the job offer, but defendant did not demonstrate that moving to Georgia would increase either of their earning capacities.  Although defendant testified that he planned to get his real estate license, he did not present any evidence that he would make more money in Georgia.  As for defendant's wife, she provided her Georgia salary offer; she could not (or would not), however, disclose her current income in Michigan.  That failure notwithstanding, the trial court found that defendant's wife likely made approximately the same income in Michigan as she would in Georgia based on the listed value of her home and the amount she paid in monthly bills.  No record evidence clearly preponderates in the opposite direction of this finding, so we must leave it undisturbed.  *Moote*, 329 Mich App at 478.

Defendant likewise failed to demonstrate that his or his wife's potential employment in Georgia would afford defendant more flexibility to stay at home with IS—as he testified, their respective potential employment would afford defendant flexibility to set his own schedule and spend time at home with his children similar to that which he already enjoyed in Michigan.  And while defendant's wife claimed her new job would provide more reliable income and that the move would help them save money on IS's extracurricular activities, nothing in the record indicates that the wife's less-reliable Michigan income or the amounts the parties paid for IS's extracurriculars actually affected the quality of defendant's and IS's lives in any discernable way.

On appeal, defendant emphasizes the concerns the trial court expressed regarding his financial reliance on his wife (despite undisputed record evidence that they shared a stable

relationship). For the reasons already explained, however, the record supports the trial court's ultimate finding that defendant failed to establish that his wife's job offer in Georgia had the capacity to improve the quality of his or IS's lives.

*Safety*. We reach the same conclusion as to the trial court's determination that defendant failed to demonstrate that Richmond Hill, Georgia was safer than Flint or Grand Blanc. Although defendant and his wife claimed the move would take them to a "better" area, neither substantiated this claim with evidence regarding the respective crime rates or any other relevant data points of Richmond Hill, Flint, and Grand Blanc. And while a mid-hearing internet search apparently indicated that Richmond Hill has "a lower overall crime rate compared to the national average," there was no evidence regarding how Grand Blanc's or Flint's crime rates compared to the national average. Defendant acknowledged that he had never been the victim of a crime in Grand Blanc, and he did not present any evidence that IS's current environment was unsafe. Simply, defendant did not offer sufficient evidence for the trial court to determine whether the change in domicile would actually increase IS's or defendant's qualities of life on the basis of safety.

*Schooling*. Nor does the record clearly preponderate in the opposite direction of the trial court's finding that defendant failed to demonstrate a change in schools would improve IS's quality of life. Although "the benefits of the school or school district where the moving party plans to relocate is a relevant consideration under MCL 722.31(4)," it is not enough for a moving party to merely provide evidence regarding the merits of the proposed school; rather, the movant must provide enough evidence for the court to determine whether the proposed school change has the capacity "to actually *improve* the child's quality of life." *Yachcik v Yachcik*, 319 Mich App 24, 41-42; 900 NW2d 113 (2017) (quotation marks and citation omitted).

Here, defendant did not produce any evidence that transferring IS to the proposed Georgia school had the capacity to improve her quality of life. Though he and his wife praised the relevant Georgia school district and the extracurricular opportunities it offers, defendant did not provide any evidence that it was better than the Grand Blanc school district in which IS was enrolled. What is more, all parties agree that IS attends a good school, is doing well in that school, and can participate in all the same extracurricular activities there that she could in Georgia. Though defendant expressed concern regarding plaintiff's ability to keep IS in her Grand Blanc school if defendant moved, plaintiff testified that IS could remain enrolled in that school and that she could reliably transport IS there from her home in Flint. This is a credibility determination to which we must defer, *Moote*, 329 Mich App at 478, and nothing in the record otherwise demonstrates that moving IS to a Richmond Hill school has the capacity to actually improve her quality of life.

*Remaining Considerations*. In addition to the findings already discussed, the trial court concluded that, if IS moved to Georgia, her "life would be uprooted by changing schools and moving away from her mother, half-sister, friends and extended family with whom she has a relationship." While defendant does not challenge the factual basis for this conclusion, he argues that the trial court failed to consider as part of its analysis that defendant's proposed parenting schedule would provide adequate opportunity for IS to maintain a relationship with plaintiff and IS's infant half-sister. The court further neglected to consider, defendant claims, the effect of the proposed move on IS's relationships with individuals on defendant's side, including several of his wife's family members (such as IS's two stepbrothers) and close friends who planned to move to the same area in Georgia. That is, it did not account for the benefit IS would have from those

relationships if the court allowed the domicile change, and the effect of the loss of those relationships if it did not.

Defendant fails to explain how the proposed parenting time he offered plaintiff—which plaintiff offered him in return if he relocated to Georgia without the court granting his request to change IS's domicile—would successfully maintain the relationship between IS and plaintiff's side of the family yet inadequately maintain the relationship between IS and defendant's (and his wife's) side of the family. And even if the court did not adequately consider the effect of IS's other familial connections, such failure was harmless and does not warrant relief. MCR 2.613(A). Indeed, while familial and other connections are a relevant consideration, they are only one factor relevant to determining whether a change in domicile has the capacity to improve the overall quality of a parent and child's lives. *Yachick*, 319 Mich App at 43-44; see also *Phillips v Jordan*, 241 Mich App 17, 31; 614 NW2d 183 (2000) (explaining that "the role of the extended family cannot be the determining factor in denying a change of domicile"). And as discussed, the record amply supports the trial court's findings that defendant failed to demonstrate the change in domicile has the capacity to improve his or IS's overall quality of life on any other ground.

## 2. FACTOR (b) (MCL 722.31(4)(b))

Under the second factor, the trial court concluded that "each party ha[d] exercised regular parenting time with the minor child." Although defendant and his wife testified that plaintiff did not use all her court-ordered parenting time, we defer to the trial court's decision to credit plaintiff's testimony that, on the occasions she did not exercise her parenting time, she did so for legitimate reasons and not from a lack of desire to spend time with IS. See *Moote*, 329 Mich App at 478 ("In reviewing a trial court's findings, this Court should defer to the trial court's determination of credibility."). Namely, plaintiff needed defendant to care for IS while plaintiff was hospitalized for complications with her high-risk pregnancy (with IS's half-sister), and she otherwise agreed to share holiday parenting time with defendant so IS could see both parents during the holidays. Accordingly, the trial court's finding that this factor weighed against a domicile change was not contrary to the great weight of the evidence.

## 3. FACTOR (c) (MCL 722.31(4)(c))

As to the third factor, the trial court found that defendant's proposed parenting schedule was not sufficient to "preserve and foster" the relationship between plaintiff and IS. That was not against the great weight of the evidence.

Under the parenting-time order in place at the time of the hearing, IS typically lived with plaintiff from Thursday afternoon until Sunday afternoon. Though defendant's wife acknowledged they could not maintain that same parenting-time schedule upon moving to Georgia, she and defendant testified that they could help accommodate similar cumulative parenting time for plaintiff, such as by having defendant travel to Michigan with IS, paying for plaintiff's travel to Georgia, and providing IS a phone with which she could communicate with plaintiff any time. Plaintiff, however, testified that she had never gone more than seven days without seeing IS and did not want to regularly go days-at-a-time without seeing her. She further contended that traveling back and forth between Georgia and Michigan was not feasible for her because she also had an infant child—IS's half-sister—in her care.

Although MCL 722.31(4)(c) does not require that the new plan upon moving a child's domicile "be equal to the prior visitation plan in all respects," *Brown*, 260 Mich App at 603, such plan still must "provide[] a realistic opportunity to preserve and foster the parental relationship previously enjoyed by the nonrelocating parent," *McKimmy v Melling*, 291 Mich App 577, 584; 805 NW2d 615 (2011). Considering plaintiff's testimony regarding the nature of her existing relationship with IS and her inability to freely travel, the record did not clearly preponderate against the trial court's finding that, if it allowed the requested domicile change, plaintiff would not "receive parenting time . . . adequate to preserve and foster the relationship between her and [IS]."

### 4. FACTOR (e) (MCL 722.31(4)(e))

Finally, the trial court concluded that "[t]here was not any testimony that there have been any issues of domestic violence in either home since entry of the last court order." On appeal, defendant insists the trial court erred by limiting evidence to events that occurred after entry of the November 2024 stipulated parenting-time order.

Parties are generally prohibited from introducing evidence that predated the most recent custody order. See *Vodvarka v Grasmeyer*, 259 Mich App 499, 514-515; 675 NW2d 847 (2003). Defendant insists that this proscription is inapplicable here and therefore the trial court erred to the extent it failed to consider evidence of domestic violence that allegedly occurred before entry of the November 2024 order. But even if he is right, his counsel waived this issue below by agreeing that the hearing's evidentiary scope was limited to events that occurred after entry of the November 2024 parenting-time order. See *Elahham v Al-Jabban*, 319 Mich App 112, 117; 899 NW2d 768 (2017). Nor can we agree with his factual assertion that his counsel's agreement applied only to custody—as opposed to domicile—matters.

Defendant does not dispute that any evidence of domestic violence related to events that allegedly occurred before entry of the November 2024 order. Considering his trial counsel's agreement that the scope of the hearing was limited to events occurring after that order, the trial court's findings as to this factor were not against the great weight of the evidence.

### III. CONCLUSION

For these reasons, we affirm.

/s/ Christopher M. Trebilcock
/s/ Mark T. Boonstra
/s/ Anica Letica

-6-